McLENNAN COUNTY v. ALBERT BOGGESS ET AL.

No. 2262.  Decided May 24, 1911.

**1.—Justice of Peace—Clerk—Commissions on Fines.**

A justice of the peace is not a "clerk" of his court within the meaning of
article 1143, Code of Criminal Procedure, and is not entitled to retain the com-
mission of five percent allowed thereby to the clerk, out of fines imposed and
collected by him.   (Pp. 312-318.)

**2.—Same—Statutory Construction—Fees of Office.**

Statutes prescribing the fees of public officers are strictly construed, and
where no compensation is fixed for a service required by law of a public officer
none can be exacted.   (P. 316.)

Question certified from the Court of Civil Appeals, Third District,
in an appeal from McLennan County.

*J. N. Gallagher,* for appellant.—A public officer is not permitted to collect fees unless the same are provided for and the amount thereof declared by law. State v. Moore, 57 Texas, 307-321; Spencer v. Galveston County, 56 Texas, 384, 393; State v. Norrell, 53 Texas, 427, 430-2; State v. Hart, 96 Texas, 102.

If official duties are required by law of an officer for the performance of which duties no compensation has been provided by law, relief must be sought through the legislative department of the government and not through the judiciary. State v. Moore, 57 Texas, 307, 321; Hallman v. Campbell, 57 Texas, 54-5.

The compensation of a justice of the peace is statutory and these statutes are to be strictly construed, and no compensation can be allowed for services or incidental expenses not expressly provided by law. 24th Cyc., p. 418, par. B; Huizar v. State, 63 S. W., 329; Ex parte Way, 89 S. W., 1075; Reynolds v. Tarrant Co., 78 Texas, 289-291.

Although the duties of a justice of the peace are in part clerical, the statutes of this State, both civil and criminal, in reference to such duties, invariably designate him as justice of the peace, and never as clerk. Revised Statutes, arts. 1571, 1579-82, 1598, 1619, 1643, 1660-1; 1673; Code Criminal Procedure, arts. 934, 936, 967-9.

The proper construction of art. 1143, of the Code of Criminal Procedure is to confine the word "clerk," as used therein, to clerks of courts of record, so designated by statute, and the meaning of the word "clerk" can not be extended by analogy to include a justice of the peace. Opinion of Attorney-General's Department to W. C. McCullum, County Auditor, McLennan County, Texas, dated Oct. 13, 1908.

*O. L. Stribling* and *Cross, Gross & Street,* for appellees.—The justice of the peace is the clerk of his court and as such is entitled to the commission provided for in article 1143. Carter v. Louisiana Purchase Exposition Co., 102 S. W., 6; Scott v. Spiegel, 67 Conn., 349; Bannister v. Wakeman, 15 L. R. A., 205; Tomkins v. Sands, 24 Am. Dec., 48; McGourin v. U. S., 102 Fed., 557; Thompson v. Jackson, 61 N. W., 1007.

On construction of statutes: 36 Cyc., 1113, 1135, 1118, 1139.

MR. JUSTICE DIBRELL delivered the opinion of the court.

The cause comes to this court upon certified question from the Court of Civil Appeals of the Third Supreme Judicial District and involves the construction of article 1143 of the Code of Criminal Procedure, as it relates to the commission of five percent on all fines, forfeitures or moneys collected for the State or county, authorized to be paid to the clerk of that court, in which such judgments are rendered, when collected. In order to get a thorough understanding of the questions propounded we quote the certificate in full, as follows:

"McLennan County instituted this suit against Albert Boggess and the sureties on his official bonds as justice of the peace, seeking to recover judgment for $210.75, alleged to have been collected by Boggess in his official capacity as pecuniary fines assessed by him and not paid over to the county. The defendants answered, and it is only necessary to state that the pleadings presented the question hereby

certified. The case is submitted in this court upon the trial judge's findings of fact, which are as follows:

## " 'FINDINGS OF FACT.

" 'In the above styled and numbered cause before me, Thos. P. Stone, as special county judge, upon consideration of the evidence, I find that the defendant Albert Boggess, was elected justice of the peace in and for Precinct No. 1, McLennan County, Texas, on November 6, 1906, and qualified as such on December 12, 1906, by taking oath of office and entering into a bond with the other defendants, Mrs. N. E. Boggess, J. C. Latimore and E. Rotan as sureties, serving for the full term of two years. That on the third day of November, 1908, the defendant Albert Boggess was again elected justice of the peace of said precinct, qualifying as such on December 12, 1908, by taking the oath of office and entering into a bond with the other defendants Mrs. N. E. Boggess and E. Rotan as sureties, entering upon the duties of said office, and has continuously since said 12th day of December, 1906, performed the duties of said office, receiving the compensation provided by law for his services as such officer, and is now performing the duties of said office.

" 'I find among the duties encumbent on the defendant Albert Boggess, as such justice of the peace he was required to render judgments and assess fines and penalties against parties charged with crime in his court and to collect the pecuniary fines and penalties assessed against said parties under said judgments rendered by him, which moneys when collected under said judgments he was required to pay over to the county treasurer of McLennan County, Texas, less the commissions allowed by law, and make quarterly reports of said collections to the Commissioners' Court of said county. That during the time commencing August 1, 1907, and ending April 30, 1910, the defendant Albert Boggess collected from various and sundry parties, during each month thereof, pecuniary fines and penalties imposed by him as judge of said court, aggregating a large sum of money, that in accordance with the law and his official duty, he paid to the treasurer of said county the amounts of money so collected, less ten percent due and payable to the county attorney of said county, five percent due and payable to the constable of said precinct, retaining five percent as his commission for collecting said sums of money, the other eighty percent he paid to the county treasurer of said county, making reports quarterly to the Commissioners' Court of said county, as shown by Exhibit "A" of plaintiffs' petition, which I find to be correct, the total amount of the commissions retained by him out of the money so collected being the five percent here in issue on all fines collected for the period mentioned, and sued for herein, and judgment asked for being $210.75. I find that $84.40 thereof was collected and retained by the defendant Boggess under his first bond and prior to December 12, 1908, and the remainder $126.35 was collected by said defendant under his second bond and subsequent to December 12, 1908.

" 'I further find that since 1879 all justices of the peace in McLennan County have retained as their commission the five percent commission for collecting such judgments, and their accounts have been

allowed and no question raised as to the correctness of their acts prior to August 1, 1907.'

"The trial court held that the defendant Boggess was the clerk of his own court within the purview of art. 1143 of the Code of Criminal Procedure, and therefore entitled to retain five percent of all fines received by him, and rendered judgment against the county. The latter has appealed and, by brief containing proper assignments of error, etc., has presented that question to this court for decision; and it being doubtful whether the question can be brought before the Supreme Court in any other manner, and it being a question of public interest, affecting the rights of many counties and officers throughout the State, we deem it proper to certify the question to the court of last resort with the suggestion that it be decided as soon as possible. For the convenience of the court we here copy the article of the Code referred to:

"'Article 1143. The district or county attorney shall be entitled to ten percent on all fines, forfeitures or moneys collected for the State or county, upon judgments recovered by him, and the clerk of the court in which such judgments are rendered shall be entitled to five percent of the amount of said judgments, to be paid out of the amount when collected.'

"With the foregoing statement and explanation, the Court of Civil Appeals certifies to the Supreme Court for decision the following question:

"Did the trial court commit error in holding that article 1143 of the Code of Criminal Procedure authorized appellee Boggess to retain five percent of the fines collected by him as compensation for clerical services performed by him in the cases in which such fines were collected?"

In the light of our system of laws there seems to be little or no ambiguity in the language of article 1143, Code of Criminal Procedure, in so far as it relates to those officers entitled to receive a commission from all fines, forfeitures or moneys collected for the State or county. It provides that the county or district attorney shall receive ten percent upon such judgments recovered by him, and the clerk of the court in which such judgments are rendered shall be entitled to five percent of the amount of said judgments to be paid out of the money when collected. Evidently the statute relates to such judgments for fines, forfeitures or money as may be recovered in the courts of justices of the peace, as such courts have jurisdiction to render judgments in such matters as well as the county and district courts, and unless by a construction of this statute the word "clerk" can be extended by implication to mean "justices of the peace," no provision has been made for paying the justices of the peace a commission out of such judgment when recovered in their courts. The Constitution of this State provides for the offices of county and district attorneys, county and district clerks and prescribes the duty and authority of such officers, making the county clerk the clerk of the County and Commissioners' Court (art. 5, sec. 20); and provides for the election of district clerks (art. 5, sec. 9). The office of justice of the peace is also created by the Constitution (art. 5, sec. 18), and thereby he is made a judicial officer with power to try and determine cases both

civil and criminal. The law clearly provides for a clerk of the County
and Commissioners' Court and for the District Court, but no provision,
either by the Constitution or statute, is made for a clerk of the Justice
Court. While the Justice Court is not recognized for all purposes as
a court of record and the presiding justice of such court is not recog-
nized as a judge, yet his court is clothed with judicial powers as defi-
nitely as the County and District Courts, and while his acts, functions
and duties are both judicial and ministerial, he has never been recog-
nized as a clerk by our Constitution, or by any statute of this State,
or by any decision of this State that we are familiar with, nor has he
ever been by any recognized authority in this State denominated a
"clerk." There exists in this State no authority for the appointment
of a clerk for the Justice Court. The law, as drawn from the several
statutory provisions relating to the courts of justices of the peace pre-
scribing the duties of justices and fixing their compensation, seem to
have contemplated that such officer should, in connection with his judi-
cial functions, also exercise and perform those of a ministerial nature.
Although the office of a justice of the peace is not remunerative, provi-
sion seems to have been made for fees for all such ministerial services,
his duties as defined requiring little, if any, ex officio work. With
regard to the collection of fines, forfeitures or money due the State or
county, while article 1013, Code of Criminal Procedure, charges jus-
tices of the peace with the duty of collecting money, within the mean-
ing of articles 1010, 1011, and 1012 of the Code of Criminal Proce-
dure, which relate to the collection of money in the name of the State,
and the report thereof to the respective District Courts of their sev-
eral counties and of money collected for the county to the Commis-
sioners' Court for each county, and prescribing the nature of such re-
port, it is clear that the exercise of such duty of collection means only
their authority to receive the money from the person adjudged to pay,
or from the officer by whom it is in fact collected and pay over to the
proper source. It is immaterial whether or not the justice, as such
officer, should in the exercise of his duty be required to perform some
services without compensation, having been provided therefor by law,
such is held to be incident to the office, upon the acceptance of which
the obligation to perform is imposed. The mere fact that the nature
of his office and the duties imposed require him to perform in addition
to judicial, certain ministerial services is not sufficient to warrant the
implication that because five percent of the judgment collected is
awarded the clerk of the court in which such judgment is recovered,
therefore, it was the intent and purpose of the lawmaker to include
in the term, clerk, that of justice of the peace.

It may be profitable as throwing light upon a proper construction to
be given the article under discussion to note the accepted legal defini-
tion of the word, clerk, when used in statutes, which is as follows:
"The word 'clerk' means the clerk of the court in which the action is
brought, or is pending, or in which the proceeding is had." Words
& Phrases, vol. 2, p. 1226.

It is urged by appellees' counsel that inasmuch as the statute uses
the general term in speaking of clerk, and in describing the attorneys
who shall receive a commission of ten percent, refers to them in limited

terms as county or district attorneys, that this fact indicates a purpose and that the general term clerk was intended to include the justices of the peace who occupy the dual position of judicial and ministerial officer. In other words, it is contended that if it was not the purpose of the Legislature to include the justice as a clerk the language would have been that the county or district clerk shall receive a commission of five percent. There might be some significance in the suggestion if it were not true under the law that either the district or county attorney may appear in either the County, District or Justice Court for the purpose of securing the judgment upon which the commission allowed is based, and the purpose of the law was to give the commission to the proper officer, whether county or district attorney, who procured the judgment. In awarding a commission to the clerk it was not necessary to make the provision disjunctively, for it was well known that the clerks could not alternate in the performance of their duties, as the one was the officer of the County Court and the other of the District Court, and if the judgment was rendered in the County Court the county clerk would receive the commission and the district clerk would receive the commission if rendered in the District Court.

The courts of this State have adopted the rule of construing strictly those statutes prescribing fees for public officers and against permitting such fees by implication as regards both the fixing of the fees and the officer who is to receive them. In construing articles 2389 and 2393, Revised Statutes, before their amendment, the Supreme Court in Hallman v. Campbell, 57 Texas, 55, had this to say, discussing the question whether the clerk or sheriff should make the copy of the citation without a fee, as bearing upon the rule of construction in such cases: "The statute, however, does not expressly give to either compensation for this service and the sheriff, in the absence of a provision to that effect, would not, more than the clerk, be required to perform it gratuitiously. Although the statute prescribing the fees for officers requires that the fee allowed the county clerks for issuing the original citation shall include that of the copy also, and the statute in regard to the fees of the district clerk does not contain a similar provision" (Rev. Stats., arts. 2389, 2393), "yet we do not feel authorized to infer that the Legislature thereby intended that the district clerks shall, by implication, be allowed fees not expressly provided for."

Again in the case of the State v. Moore, 57 Texas, 321, where the county attorney of Travis County sued to recover ten percent commission on judgment recovered by him for the State against a defaulting tax collector, when the civil statute provided for a commission without fixing the amount, and it was attempted to justify ten percent by virtue of the very article we are here construing, Judge Stayton had this to say: "It is not believed that any well considered case can be found in which a public officer has been permitted to collect fees unless the same are provided for and the amount thereof declared by law. . . . No public officer can withdraw from the State treasury, or impede in its course to the treasury, any money without a law authorizing him to do so, and clearly fixing the amount."

We can not believe the Legislature intended by giving to the clerk of the court in which the judgment for a forfeiture, fine or money

was rendered and collected, a commission of five percent to include the justice of the peace under the term, clerk, but we rather think it was an oversight. This view is strengthened when we consider that wherever the Constitution or the statute clothes the justice of the peace with some new official paraphernalia it is done by express provision. He is by virtue of the office of justice of the peace a notary public, but he is such by express act of the Constitution. He is a magistrate and a coroner, but by virtue of direct legislative act. In short, whatever recognized official character he possesses in this State in addition to that of judicial officer of justice of the peace, he possesses by virtue of positive constitutional or legislative declaration. He possesses nothing in the way of official character by implication.

We are cited to a number of cases by appellees, particularly the following: Carter v. Louisiana Pur. Ex. Co., 102 S. W., 6; Scott v. Stiegel, 67 Conn., 349; Banister v. Wakeman, 15 L. R. A., 305; Thomkins v. Sands, 24 Am. Dec., 48; McGourin v. U. S., 102 Fed. Rep., 557; Thomson v. Jackson, 61 N. W., 107. All the authorities cited in support of appellee's contention are cases of other States, and no one of the cases cited, as appears from a careful inspection of each of them, had for determination the question involved in this case. Not only was the question in this case not involved in any of the cases so cited and relied upon by appellees, but no question remotely analagous was there presented, unless perhaps in the McGourin v. U. S. case. The case of Carter v. Louisiana Purchase Exposition Co. involved the question whether the correction of an improperly entered judgment by a justice of the peace, or under his direction, was the revision of a judicial or ministerial act. The case of Scott v. Spiegel involved the validity of a mittimus issued after adjournment of court and hinged upon the fact whether the issuance of said process by the justice was a judicial or ministerial act. If judicial the writ was void, having been issued after adjournment of court; if ministerial, it was valid. The court held the act ministerial. The same, or almost the same, point was in the Banister v. Wakeman case, where the justice unlawfully issued the writ of mittimus pending an appeal and was sued for damages. The court held the act ministerial and not judicial and therefore the plaintiff had a cause of action. The case of Thomkins v. Sands, involved the question whether the approval of an appeal bond by a justice was a judicial or ministerial act. The justice had corruptly refused to approve the bond, and if the act of approving the bond was a judicial act the plaintiff had no cause of action, but if ministerial, he had a cause of action. The court held the act ministerial. Likewise did the case of Thompson v. Jackson involve the question whether a certain act of the justice was judicial or ministerial. In all of these cases is found the declaration, in substance, that the justice performs both the functions of judicial officer and clerk, but it is not decided in either of the cases referred to that the terms, justice and clerk are synonymous. The cases do not, in our judgment, form a basis for the contention of appellees.

In consequence of the views herein entertained and expressed we think the trial court committed error "in holding that article 1143 of the Code of Criminal Procedure authorized appellee, Boggess, to

retain five percent of the fines collected by him as compensation for clerical services performed by him in the cases in which such fines were collected," and we therefore answer the question in the affirmative.