## EASTLAND COUNTY v. HAZEL et al. *
### (No. 1861.)

(Court of Civil Appeals of Texas. El Paso. Oct. 28, 1926. Rehearing Denied Nov. 18, 1926.)

**1. District and prosecuting attorneys ⚖️12—County, as beneficiary in county attorney's bond, may sue for excess fees retained by him.**

County, as beneficiary in county attorney's bond, may maintain suit for excess fees retained by him, rule being different than at common law, where only obligee in bond could sue thereon.

**2. District and prosecuting attorneys ⚖️12—Sureties on county attorney's bond held not to escape liability for excess fees retained because state was not party plaintiff; "may" (Rev. St. 1925, art. 1991; Acts 22d Leg. [1891] c. 67, §§ 3, 4).**

Sureties on county attorney's bond *held* not to escape liability, under Rev. St. 1925, art. 1991, for excess fees retained because state was not made party plaintiff, in view of Acts 22d Leg. (1891) c. 67, §§ 3 and 4, since "may" in article 1991, providing that suit may be instituted in name of state, is not word of command.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, May.]

**3. District and prosecuting attorneys ⚖️12—County attorney of Eastland county and sureties on his official bond must account to county for excess fees retained (Acts 36th Leg. [1919] c. 139, § 4).**

County attorney of Eastland county and sureties on official bond *held* required to account to county for excess fees retained, since Acts 36th Leg. (1919) c. 139, § 4, being part of acts creating Eighty-Eighth and Ninty-First district courts and prescribing method for ascertaining amount county attorney shall receive, are inapplicable.

**4. Officers ⚖️94—Compensation for public officer must be most favorably construed in favor of government.**

When compensation of public officer is left to construction, it must be most favorably construed in favor of government.

---

**5. Officers ☞94—"Fees of all kinds" for public officers embrace every kind of compensation allowed by law (Vernon's Sayles' Ann. Civ. St. 1914, art. 3881).**

"Fees of all kinds," as used in Vernon's Sayles' Ann. Civ. St. 1914, art. 3881, relative to maximum amount of fees to be allowed certain officers, embrace every kind of compensation allowed by law unless excepted by some provision of statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fees.]

**6. Officers ☞30—County attorney of Eastland county cannot simultaneously hold two offices of profit.**

County attorney of Eastland county, having been elected and having given bond, cannot, under Constitution, hold two offices of profit at same time.

**7. Limitation of actions ☞57(5)—Limitation will not run against county's action for excess fees retained by county attorney until end of fiscal year (Rev. St. 1925, arts. 3891, 3897).**

Statute of limitations will not run against county's action for excess fees, retained by county attorney in 1920, until end of fiscal year or time for making report, provided for in Rev. St. 1925, art. 3897, since settlement can be required at no other time, in view of article 3891.

Appeal from District Court, Eastland County; Elzo Been, Judge.

Action by Eastland County against G. G. Hazel and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

W. J. Barnes, County Atty., of Eastland, and Barker & Orn, of Cisco, for appellant.

Conner & McRae, of Eastland, for appellees.

PELPHREY, C. J. Eastland county brought this suit against G. G. Hazel and his bondsmen to recover the sum of $5,056.82, which it alleged Hazel had received while serving Eastland county as county attorney from November 5, 1918, to November 30, 1920, in the way of excess fees, said fees having been received by Hazel for services in the Eighty-Eighth and Ninety-First district courts and from the county as ex officio fees. Eastland county alleged that said fees belonged to it and were being illegally retained by Hazel.

The original petition was signed only by J. D. Barker, special attorney employed by the commissioners' court of Eastland county, and was not signed by the county attorney of said county. The amended petition was signed by both.

Appellees answered by a plea to the jurisdiction, demurrers, and a plea in abatement, alleging that the cause could not be maintained by Eastland county because suits on official bonds could not be brought in the name of the state, by pleas of limitation,

under both the two and four year statutes, by special answer, alleging that, under the provisions of the laws creating the Eighty-Eighth and Ninety-First district courts, the county attorney was not required to account for fees earned in said courts, and by general denial.

Appellant filed a supplemental pleading answering the pleas of limitation and alleged that the county attorney of Eastland county is and was under legal obligation to pay over to Eastland county all excess fees earned by him.

The case was tried without the intervention of a jury, and judgment was rendered in favor of appellees from which judgment Eastland county has appealed.

At the request of counsel for appellant, the court filed both findings of fact and conclusions of law.

Opinion.

The conclusions of law filed by the court are as follows:

First. Article 1847 of the Revised Civil Statutes is mandatory as to third parties, and this suit should be abated as to sureties on G. G. Hazel's official bond, to wit, Cyrus B. Frost, P. S. Wolfe, and R. E. Sikes.

Second. The acts of the Legislature, creating the Eighty-Eighth and Ninety-First district courts of Texas and providing that the county attorney shall represent the state in said courts, fix the compensation that he shall receive therefor, and, there being no provision in said special acts requiring him to account for such fees as he may receive from the state in the prosecution of felony cases in district court, I conclude that such special acts control, and that Eastland county is not entitled to recover any such fees, for which recovery plaintiff has brought this suit.

Third. That Eastland county is not entitled to recover any sum for ex officio fees for the reason that the two-year statute of limitation would apply thereto, and, more than two years having elapsed since the receipt of such ex officio fees and beginning of this suit, the same would be barred by the two-year statute of limitation.

Fourth. That all items of excess fees, if any, received by G. G. Hazel, prior to August 8, 1920, the date when this suit was filed, are barred by the four-year statute of limitation, as more than four years elapsed between said date and the time of the bringing of this suit, and no fees that were received prior to August 8, 1920, could be recovered in a suit on said bond.

Fifth. That under the 1920 census, G. G. Hazel, as county attorney of Eastland county, was entitled to receive, as such county attorney, the maximum of $3,500 in fees, exclusive of any state fees received by him in felony cases.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Sixth. The ex officio fees paid to G. G. Hazel by Eastland county during a part of his term of office, as shown by the conclusion of fact No. 5, are not such fees as are contemplated by law as excess fees of office and for which he would be required to report or account for, and no liability on his bond is occasioned thereby.

Seventh. That Eastland county had the right to institute. this suit in the manner and way in which the same was instituted.

Eighth. That, under the foregoing conclusions of fact, I conclude, as a matter of law, that Eastland county is not entitled to recover in this case, and that the defendants should recover of and from the county all costs herein incurred.

[1] The question as to whether or not Eastland county can maintain this suit, being only a beneficiary in the bond, has been raised. At common law, only, the obligee named in the bond could maintain a suit on an official bond. This rule has been changed by statute in several states, and in others by decisions of the court. Our state is in the latter class.

Our Supreme Court, in Hudson v. Morriss, 55 Tex. 595, in discussing who must be parties plaintiff in a suit, held as follows:

"In every stage of judicial proceeding in a suit, from its institution on, through every stage, down to the final extinction or satisfaction of the judgment, it is to be seen from the quotations and citations which have been made that the party who is beneficially interested is permitted to act in his own behalf to enforce his right, although the proceedings may have been had in the name of another party who appears to have the legal right, and to be the ostensible owner of the interest involved; and that, when necessary to the maintenance of the beneficiary's right, the other party or his legal representatives will be forced to allow the proceedings to be preserved in the name of the original plaintiff."

Again, in Smith v. Wingate, 61 Tex. 54, the same court said:

"This suit was brought in the name of the obligee of the bond for the use of the county of Orange, the beneficiary of the instrument.

"This was, in effect, bringing the action in the corporate name of the county; for it has often been held by this court that, when suit is brought by one person for the use of another, the latter is the real plaintiff, and the former, who is only nominally a party, may withdraw from the suit, and it can be conducted and carried on by the person for whose use it was originally brought, and no new party is thereby made."

From the above quotations it is apparent that the common-law rule does not prevail in Texas, and that parties having the beneficial interest are entitled to sue to enforce any rights they may have.

[2] Appellant further contends that the court was in error in concluding, as a matter of law, that article 1847 (article 1991, Revised Civil Statutes 1925) was mandatory as to the sureties on appellee Hazel's bond.

It was held by the Supreme Court, in Rains v. Herring, 68 Tex. 468, 5 S. W. 369, that the word "may" in a statute might be either permissive or obligatory, depending upon the true intent and object of the Legislature in making the enactment.

In San Angelo National Bank v. Fitzpatrick et al., 88 Tex. 213, 30 S. W. 1053, the same court held that, in its primary and ordinary signification, the word "may" is a word of permission and not one of command; that, "before treating it as a word of command, there should be something, either in the subject-matter or the context, to indicate an intention that it was employed in that sense."

Article 1847 reads as follows:

"Whenever an official bond is made payable to the state of Texas, or any officer thereof, and a recovery thereon is authorized by, or would inure to the benefit of parties other than the state, suit may be instituted on such bond in the name of the state alone for the benefit of all parties entitled to recover thereon."

This statute was passed at the regular session of the Twenty-Second Legislature and was included in House Bill No. 563, chapter 67, Acts 22d Legislature, p. 86, § 3. In the same act, in sections 1 and 2, the Legislature provided for the joining as parties defendant of all the sureties on an officer's bond in cases where he has held the office for more than one term, and also provided that, in a suit upon the bond of a state officer, any subordinate officer who has given bond, either to the state or such state officer, to cover the default sued for or any part thereof, can be joined as a defendant, together with his sureties.

The caption of the act is as follows:

"An act authorizing principals and sureties on different official bonds to be joined as defendants in one and the same suits on official bonds to be instituted in the name of the state alone."

This act was passed with the following emergency clause:

"Section 4: The fact that there is no law authorizing the suits herein provided for, and the fact that the enactment of such a law is of great importance creates an imperative public necessity, that the rule requiring bills to be read on three several days in each house be suspended, and that this act take effect from and after its passage and it is so enacted."

It can readily be seen that the Legislature was endeavoring to simplify the procedure in actions on official bonds and to obviate the necessity of bringing numerous suits to recover from all parties liable.

The act, taken as a whole, caption and emergency clause included, in our opinion, evidences an intention on the part of the Legislature to permit certain parties to be made joint defendants and to allow the state

alone to bring an action for the benefit of any or all parties entitled to recover on official bonds.

It certainly could not be said that a state officer, sued on his official bond, could have the suit against him and his official bondsmen abated merely because one of his subordinates, who had given him a bond to cover a part of the default sued for, was not made a party defendant.

We are of the opinion that there is nothing in either the subject-matter or the context of this act which indicates an intention on the part of the Legislature to use the word "may" as a word of command, as was held necessary in San Angelo National Bank v. Fitzpatrick et al., supra.

The bond in this case provides that appellee Hazel would not only faithfully perform all the duties required of him by law as county attorney, but that he would faithfully pay over, in the manner prescribed by law, all moneys which he might collect or which might come into his hands for the state or any county. Consequently, part of the undertaking of appellees was to secure to Eastland county any moneys coming into Hazel's hands belonging to it. It appears to us to be a harsh rule, indeed, which would permit the sureties on such a bond to escape liability thereon, merely because the state of Texas, who could be nothing more, under our law, than a mere nominal party, was not made a party plaintiff in the suit. We cannot believe that the Legislature ever so intended and therefore hold that article 1847 is merely directory and that the trial court was in error in holding it to be mandatory as to the sureties on appellee Hazel's bond.

[3] In its second assignment, appellant complains of the conclusion of the law by the court that the special acts creating the Eighty-Eighth and Ninety-First district courts control, and that, there being no provision in said acts requiring the county attorney to account for the fees earned therein, Eastland county was not entitled to recover the same as excess fees. With this contention of appellant, we agree.

As we view the acts above referred to, they only prescribe a method for ascertaining the amount which the county attorney shall receive for his services in the district courts and do not, in any way, make disposition of them after their receipt. If we are correct in this, then appellee Hazel, as far as accounting for fees is concerned, would be governed by the general statutes on the subject.

[4] It is well settled that, when the compensation of a public officer is left to construction, it must be most favorably construed in favor of the government. Burke, Co. Clerk, v. Bexar County (Tex. Civ. App.) 271 S. W. 132; McLennan County v. Boggess, 104 Tex. 311, 137 S. W. 346; Hallman v.

Campbell, 57 Tex. 54; State v. Moore, 57 Tex. 307.

[5] It is also as well settled that the phrase "fees of all kinds," as used in article 3881, Vernon's Sayles' Texas Civil Statutes 1914, embraces every kind of compensation allowed by law, unless excepted by some provision of the statute. Ellis County v. Thompson, 95 Tex. 22, 64 S. W. 927, 66 S. W. 48; Nichols v. Galveston County, 111 Tex. 50, 228 S. W. 547; Ward v. Harris County (Tex. Civ. App.) 209 S. W. 793, writ of error denied.

The only reference in said special acts as to the compensation of the county attorney for services in the district courts, is found in section 4, c. 139, of the General Laws of the 36th Legislature, and reads as follows:

"Section 4: The county attorney of Eastland county shall do and perform all the duties of county attorney and district attorney in the [said Ninety-First judicial district, as well as the] Eighty-Eighth judicial district, composed of Eastland county, and shall receive the same compensation for his services as is now, or which may hereafter be, fixed by law for district attorneys acting in judicial districts composed of two or more counties."

[6] It must be remembered that appellee Hazel was elected and gave a bond as county attorney of Eastland, and there is no way in which he can, under our Constitution, hold two offices of profit at one and the same time.

Our view of the effect of these acts creating the Eighty-Eighth and Ninety-First district courts was to prescribe additional duties for the county attorney of Eastland county to perform, which the Legislature might have done without providing any compensation therefor; that the provision relative to the compensation he was to receive in no way affected his liability to account for fees received for services in said district courts; and that he, together with the sureties on his official bond, is liable to Eastland county for any of such fees which are in excess of the maximum allowed him by law.

In view of our holdings on the above questions, we deem it unnecessary to discuss appellant's third assignment of error, as we feel sure that on a retrial of the case competent evidence will be available as to which census shall govern the disposition of the case.

[7] In his fourth conclusion of law, the trial court concluded that all excess fees received by appellee Hazel, prior to August 8, 1920, a date four years before the filing of the suit, would be barred by the four-year statute of limitation. This conclusion is not questioned by appellant, yet we feel called upon to discuss it for the purpose of giving the trial court the benefit of our views on the question involved.

In our opinion, the statute would not begin to run as to fees collected during the year 1920 until the end of the fiscal year, or until the time for the making of the report provided for in article 3897, Revised Civil Statutes 1925.

The legislation on question of fees of office and accounting unquestionably contemplates that settlements should be made between the county and the officers mentioned on a yearly basis, to wit, at the close of the fiscal year, therefore the county would have no right to demand or sue for excess fees until the report provided for in article 3897, R. S. 1925, had been made, showing the amount received and expended by the officer.

Article 3891, R. S. 1925 (art. 3889, 1914 Statutes) provides how the fees shall be disposed of and reads as follows:

"Each officer named in this chapter shall first, out of the fees of his office, pay or be paid, the amount allowed him under the provisions of this chapter, together with the salaries of his assistants or deputies. If the fees of such office collected in any year be more than the amount needed to pay the amount allowed such officer and his assistants and deputies, same shall be deemed excess fees, and of such excess fees such officer shall retain one-fourth; and in counties having between 25,000 and 38,000 inhabitants until such one-fourth amounts to the sum of twelve hundred and fifty dollars; and counties containing a city of more than 25,000 population, or in which county the population exceeds 38,000, until such one-fourth amounts to the sum of fifteen hundred dollars, such population to be based on the United States census last preceding any given year. All amounts received by such officer as fees of his office, beside those which he is allowed to retain by the provisions of this chapter, shall be paid into the county treasurer of such county."

This statute, taken in connection with article 3897 (article 3895, 1914 Statutes), could be given no practical effect if settlements could be required of officers other than at the close of the fiscal year and on a yearly basis.

Reversed and remanded.