

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Pat Beene
County Attorney
Andrews County
Andrews, Texas

Dear Sir:

Opinion No. O-1933
Re: 1. Can the commissioners' court
legally allow an item of $600.00
as car expenses to the sheriff
under the facts set forth?
2. Is the tax assessor-collector
responsible for a loss of money
due to robbery?
3. Can county commissioners le-
gally pass an order allowing
themselves the full maximum under
Art. 2350 when their time slips
which were passed upon did not
reach the maximum?

Your request for an opinion of this department on
the above stated questions has been received.

We quote from your letter as follows:

"Andrews County, Texas has a population of
2000 people, and for the year of 1938 the valua-
tion was between five and six million, and for
the year of 1939 the valuation was a little over
seven million.

"The Sheriff of Andrews County is being paid
on a fee basis, and his fees run over the maximum.
In his fee report for the year of 1939 he showed
as a credit to himself an item of $600.00, which
he is claiming as car expense, but he failed to
make monthly expense reports as provided by Arti-
cle No. 3899, and further even in his fee report
he does not attempt to itemize or explain the de-
duction other than car expense.

"'Question'  Can the Commissioners Court

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

legally allow this item of $600.00, under the
above set out circumstances, to the Sheriff?

"The Sheriff of Andrews County is also
the Collector and Assessor of Taxes; and the
bank, which is the County Depository, is lo-
cated in Midland, Texas, and the only place
provided for his keeping the money, which he
collects, other than in the depository is a
vault in the Court house; in April of last
year this vault was broken into by thieves,
who have never been apprehended, and $487.64
in cash was taken.

"'Question' is the Collector responsible
for this loss, and should it be returned to
the County?

"As above noted for the year of 1938
Andrews County had a valuation of between 5
and 6 million, therefore the county commission-
ers salaries was figured on a per diem basis of
$5.00 per day, for the year of 1939. Each Com-
missioner, during the year of 1939, turned in
his time at each Commissioners' Court meeting,
and it was passed upon and the Clerk issued a
warrant for such time turned in, and at the end
of the year each of the commissioners had not
drawn all of the maximum provided under
Article 2350, but they passed an order command-
ing the clerk to issue a warrant to each com-
missioner in amount of the difference between
amount received during year and the maximum,
which in this instance is $1200.00.

"'Question' Can this be legally done?

Section (a) of Article 3899, Vernon's Annotated
Civil Statutes, reads in part as follows:

"At the close of each month of his tenure of
office each officer named herein who is compen-
sated on a fee basis shall make as part of the
report now required by law, an itemized and sworn
statement of all the actual and necessary expenses

incurred by him in the conduct of his office,
such as stationery, stamps, telephone, pre-
miums on officials' bonds, including the cost
of surety bonds for his Deputies, premium on
fire, burglary, theft, robbery insurance pro-
tecting public funds, traveling expenses and
other necessary expenses. . . If such expenses
be incurred in conne tion with any particular
case, such statement shall name such case.
Such expense account shall be subject to the
audit of the County Auditor, if any, otherwise
by the Commissioners' Court; and if it appears
that any item of such expense was not incurred
by such officer or such item was not a necessary
expense of office, such item shall be by such
auditor or court rejected, in which case the
collections of such item may be adjudicated in
any court of competent jurisdiction. The amount
of salaries paid to Assistants and Deputies shall
also be clearly shown by such officer, giving
the name, position and amount paid each; and in
no event shall any officer show any greater
amount than actually paid any such Assistant or
Deputy. The amount of such expenses, together
with the amount of salaries paid to Assistants,
Deputies and Clerks shall be paid out of the
fees earned by such officer. . ."

The case of Pierson, Justice of the Peace, et al.
vs. Galveston County, 131 S.W. (2d) 27, holds, among other
things, that a justice of the peace was not entitled to re-
cover from the county certain items of expense claimed for
postage, traveling expenses, and messenger service during
certain years in office, where the justice did not render
monthly statements of such expenses as required by statute,
but merely filed annual reports estimating the expense in
lump sum amounts.

Referring to Article 3899, supra, we quote from
the above mentioned case as follows:

"The manifest purpose of this statute was
to provide a means of ascertaining the correct-
ness of expense items each month as they are
incurred. The actual expenses paid or incurred
constitute the measure of the official's right

to recoupment. The monthly itemization is for the protection of the county by affording a means of ascertaining the fact and amount of such claimed item of expense and whether it was properly chargeable as such. It is manifest from the annual reports and confirmed by the evidence that these expenses were merely estimated and a lump sum given each year. The statute would be of no value if its salutory provisions could be evaded in this manner. We hold the items properly disallowed by the Commissioners' Court, and the trial court's judgment correct in denying recovery therefor."

Therefore, your first question is answered in the negative.

In the case of Boggs vs. The State, 46 Tex. Rep. p. 10, the defendants filed a special answer, averring that Boggs, as Tax Collector, having collected the taxes, and being about to start to Austin with the money, had $1300.00 of it stolen from him, without his fault, (stating the circumstances of its loss.) The plaintiff filed exceptions to this answer, which was sustained, which is assigned as error.

We quote from the above mentioned case as follows:

"It was contended by the counsel for the appellants that Boggs, being an officer, occupied toward the state the position of a bailee for hire, in the business of collecting, preserving, and accounting for the taxes of Rusk County, and that as he took care of the money in his hands, as a prudent man would ordinarily have done, in reference to his own property, neither he nor his sureties were responsible for its loss.

"We do not understand such to be the legal position and responsibility of the public officer whose duty it is to collect and account for the money of the state as a tax collector, nor is it in accordance with the terms of his bond, signed by him and his sureities as prescribed by law.

"He is bound to account for and pay over the amount of money which he collects less his

commissions, or his sureties must do it for
him."

We quote from Corpus Juris 61, p.1023, as follows:

"A collector of taxes is not regarded as
a bailee of the money collected by him and re-
maining in his hands, but he is an insurer of
its safety against loss by any means whatever.
He is therefore responsible for the taxes col-
lected, although he is robbed of the money or
it is stolen from him."

The case of American Indemnity Company, et al. vs.
State, 104 S.W. (2d) 68, was a suit instituted by the state
in the district court of Hidalgo County for two distinct pur-
poses, first, to set aside the judgment in cause No. B-3597,
styled The State of Texas v. Brown Land and Cattle Company,
et al., and second, to recover from O. Em. Jones, former tax
collector of Hidalgo County, as principal, and the American
Indemnity Company, as surety on his official bonds as tax
collector, the sum of $16,379.11, together with interest,
alleged to have been paid out by Jones from funds in his
hands as tax collector, in conformity with and under color
of the judgment in cause No. B-3597.

We quote from the above mentioned case as follows:

"It was said in the case of Town of
Cameron v. Hicks, 65 W. Va. 484, 64 S.E. 832,
835, 17 Ann. Cas. 926; 'By the great weight of
authority, the custodian of public money is not
a bailee, bound only to the exercise of high
degree of care, prudence, and diligence for its
safety, and exeusable for the loss thereof by
fire, robbery, theft, or bank failure, when such
loss is not in any sense due to negligence or
misconduct on his part, but a debtor and insurer
to the extent of the amount received, excusable
for no losses except those resulting from acts
of God or the public enemy.'

"Though Jones may have paid this money out
in good faith and under the belief that it was
his duty to do so, as a result of the judgment
in cause No. B-3597, nevertheless, he was an
insurer of these funds and his failure to pro-
perly account for them to the State of Texas
renders him and the surety on his official bond
liable to the State to that extent. . ."

Your second question is answered in the affirmative.

Article 2350, Vernon's Annotated Civil Statutes, reads in part as follows:

"In counties having the following assessed valuations, respectively, as shown by the total assessed valuations of all properties certified by the county assessor and approved by the Commissioners Court, for county purposes, for the previous year, from time to time, the County Commissioners of such counties shall each receive annual salaries not to exceed the amounts herein specified, said salaries to be paid in equal monthly installments, at least one-half, and not exceeding three-fourths, out of the Road and Bridge Fund and the remainder out of the General Fund of the County; said assessed valuations and salaries applicable thereto being as follows:

". . .

"In counties having assessed valuation of more than Four Million Five Hundred Thousand and One Dollars ($4,500,001) and less than Six Million Dollars ($6,000,000) each commissioner shall receive Five Dollars ($5) per day for each day served as commissioner, and a like amount when acting as ex-officio road superintendent in his Commissioners Precinct, provided in no event shall his total compensation exceed Twelve Hundred Dollars ($1200) in any one year."

As above stated, Andrews County had assessed valuations of all properties of between Five Dollars ($5) per day for each day served as commissioner for the year of 1939 and each commissioner turned in his time at each commissioners' court meeting, and it was passed upon and the clerk issued a warrant for such time turned in. At the end of the year each of the commissioners had not drawn all of the maximum provided under Article 2350, supra, but the

commissioners' court passed an order commanding the clerk to issue a warrant to each commissioner in amount of the difference between the amount received during the year and the maximum, which in this instance was Twelve Hundred Dollars ($1200). Each commissioner is entitled to Five Dollars ($5) per day for each day actually served as commissione , as provided in Article 2350, supra, and is not entitled to the maximum unless he has actually served as commissioner for a sufficient length of time at $5. per day which would amount to the maximum of $1200. In this connection we interpret the words "each day served as commissioner" to mean each day or the time actually served by each commissioner in performing the duties of commissioner as imposed by law and does not include any time which was not actually served in the performing of the duties as commissioner.

We quote from Texas Juris. Vol 34, p. 529 as follows:

"An officer is entitled to compensation at the rate prescribed by the statute which is in force when his services are rendered. Ordinarily statutes and orders making changes in the compensation of officers speak prospectively, and will not be given a retroactive effect. Nor may a commissioners' court make a changed rate of compensation apply to services already rendered. . ."

Statutes prescribing fees for public officers are strictly construed; hence a right to fees may not rest in implication. Where this right is left to construction, the language of the law must be construed in favor of the government. Where a statute is capable of two constructions, one of which would give an officer compensation for his services in addition to his salary and the other not, the later construction should be adopted. See the case of McCalla vs. City of Rockdale, 246 S.W. 654; Eastland County vs. Hazel, 288 S.W. 518; Madden vs. Hardy, 5o S.W. 926.

In view of the foregoing authorities, your third question is answered in the negative.

Trusting that the foregoing fully answers your inquiries, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By        /s/
          Ardell Williams
          Assistant