R. E. MOORE ET AL V. HONORABLE GEORGE H. SHEPPARD,
COMPTROLLER OF PUBLIC ACCOUNTS.

No. A-779. Decided February 13, 1946.
(192 S. W., 2d Series, 559.)

*Charles L. Black*, of Austin, for petitioners.

Sums of money collected by clerks of the courts of civil appeals for supplying uncertified, unofficial copies of opinions of such courts or other documents do not constitute "fees of office." Neither can the Legislature, in an appropriation bill, attempt to legislate in respect to the rights of the clerks of the courts of civil appeals to retain sums of money collected by them for supplying uncertified, unofficial copies of opinions and other documents and records, and such attempt was devoid of effect. Burlingame v. Hardin County, 180 Ia. 919, 164 N. W.

115; City of Austin v. Johns, 62 Texas 179; Linden v. Finley, 92 Texas 451, 49 S. W. 578.

*Grover Sellers*, Attorney General, *Geo. W. Barcus*, Assistant Attorney General, for respondent.

On the theory that petitioners were indebted to the State because of their retaining fees collected for uncertified, unofficial copies of opinions of their courts: Bitter v. Bexar County, 11 S. W. (2d) 163; Stuard v. Thompson, 251 S. W. 277; Giddings v. San Antonio, 47 Texas 548.

MR. JUSTICE SHARP delivered the opinion of the Court.

This is an original action in this Court, in which petitioners, R. E. Moore and three other clerks of Courts of Civil Appeals, seek a mandamus to compel respondent, George H. Sheppard, Comptroller of Public Accounts, to issue warrants on the State Treasury in payment of their salaries. Upon being informed by the State Auditor that petitioners were indebted to the State, respondent declined to issue the warrants, because of Article 4350, R. C. S., which provides: "No warrant shall be be issued to any person indebted to the State * * *."

The indebtedness referred to, and which presents the sole issue here, consists of money received by petitioners for furnishing uncertified and unofficial copies of opinions of their respective courts. It is undisputed that such money was received and was not deposited in the State Treasury, but was retained by petitioners individually. The precise issue is, therefore, whether the petitioners must account to the State Treasurer for the sums of money they have collected for uncertified, unofficial copies of opinions.

The fees to be charged by petitioners have been fixed by statute since 1893, and are now contained in Article 3924, R. C. S. That Article provides in part:

"The clerks of the Courts of Civil Appeals shall receive the following fees:

 * * * * * *

"Making copies of any papers or records in their offices, including certificate and seal, for each 100 words . . . . . .10."

It has been the uniform ruling of the Attorney General since 1923, with one exception, that the above provisions do not include the furnishings of uncertified, unofficial papers. See Opinion No. 2787, of September 26, 1929, and Opinion of August 26, 1935. The reasons for such rulings were: (1) That the Leg-

islature, by inserting the words "including certificate and seal," intended that the fees should be applicable only to certified copies, for otherwise the inclusion of such words would not have been necessary; and (2) that the Legislature later, noting this situation, placed a "rider" on an appropriation bill, to be discussed later herein, which directed that the fees for uncertified copies should be deposited in the State Treasury.

A like construction was given by this Court to a similar Article (Article 3923, R. C. S.), applicable to the Clerk of the Supreme Court, in an order entered on the Court's minutes on April, 1, 1939. Pursuant to legislative authority (S. B. 156 of the 46th Legislature, Title: Fees of Office, Chap. 1, p. 328), this Court fixed and allowed certain fees to its Clerk. Notwithstanding the fact that by statute the Clerk was authoried to charge fifteen cents per hundred words for copies of papers and records in his office, including certificate and seal, this Court stated: "The Court finds that there is now no fee fixed by law for making and furnishing of uncertified, unofficial copies of opinions, or other papers or records on file in the office of the clerk of the Supreme Court, and that charges which have been made and collected for such service have not been accountable fees of office." This Court thereupon set a fee for such uncertified copy, but directed its Clerk to turn such sums of money received therefor, as other fees, into the State Treasury.

The same construction was given a similar statute by the Supreme Court of Indiana in Ex parte Brown, 166 Ind. 593, 78 N. E. 553. The Indiana statute simply prescribed that "for every copy of record or other paper, per one hudred words * * * ten cents." That statute did not include the phrase "including certificate and seal" or any other similar expression. It was held that the words "copy of record or other paper" meant a certified copy such as would be admissible in evidence. That court held that its Clerk could, therefore, at his discretion, furnish to others uncertified and unauthenticated carbon copies of court records. certified and unauthenticated carbon copies of court records.

This Court in the case of Nueces County v. Currington, 139 Texas, 297, 162 S. W. (2d) 687, in construing Article 7324, R. C. S., held that such statute, requiring the tax collector to furnish on demand, to any person, firm, or corporation, statements regarding any particular lot or tract, applies to any lot or tract of land, and not merely to those on the delinquent roll; and charges made for such service were not "personal," but were made and collected in her official capacity as tax collector, and it was her duty to account for same to the county. See also Harris County v. Hall, 141 Texas 388, 172 S. W. (2d) 691.

■ The Clerks of the Courts of Civil Appeals are not entitled to receive extra compensation for services performed within the scope of their official duties prescribed by law. The general principle prohibiting public officials from charging fees for the performance of their official duties does not prohibit them from charging for their services for acts that they are under no obligation, under the law, to perform. Morris v. Kasling, 79 Texas 141, 15 S. W. 226, 11 L. R. A. 398; Burlingame v. Hardin County, 180 Iowa 919, 164 N. W. 115; Northrop v. Ballard, 169 Mass. 295, 47 N. E. 1000, 61 A. S. R. 286; State v. Holm, 70 Neb. 606, 97 N. W. 821, 64 L. R. A. 131; United States v. Mosby, 133 U. S. 273, 10 S. Ct. 327; 33 L. Ed. 625; 46 C. J., p. 1017; 22 R. C. L., p. 540.

We construe Article 3924, supra, the furnishing of uncertified, unofficial copies of opinions is not included in that portion of such Article prescribing that the Clerk shall furnish copies of papers or records, including certificate and seal, at ten cents per hundred words; and hence there is no statute making it the duty of petitioners to furnish unofficial copies of opinions, and there is no statute fixing fees therefor.

The Legislature having prescribed by general statutes the various duties of the Clerks of the Courts of Civil Appeals, and having fixed the fees to be charged by them in performing their official duties, and having omitted to prescribe fees for furnishing unofficial, uncertified copies of opinions, it is necessary to determine whether the Legislature by a "rider" to an appropriation bill can require that money received for such unofficial, uncertified copies be deposited in the State Treasury.

The Legislature since 1933 has appended to appropriation bills for the Judiciary a section directing that fees paid to Clerks, for either official or unofficial copies of opinions, or other documents, be paid into the State Treasury. That part of the Appropriation Bill for 1935 is carried as Article 6819d in Vernon's Annotated Civil Statutes. The 1945 Appropriation Bill (Acts 49th Legislature, p. 958) provides as follows:

"Sec. 3. All fees or sums of money of any kind paid to any court for which appropriations are made herein or to any of the clerks, officers, or employees of any such court, whether such fees or sums of money of any kind are for official or unofficial copies of opinions, carbon copies, or for other services or documents, shall be deposited at the close of each month in the General Fund of the State Treasury, and none of such fees or sums of money of any kind shall be retained by or paid to said clerks, officers, or employees. Each court employee whose salary is pro-

vided herein, except porters, shall file with such court * * * an affidavit showing that he has not retained any compensation out of any court fees or other fees or sums of money of any kind received by him of the court during the previous month and showing that all such fees or sums of money of any kind have been deposited in the State Treasury. The Comptroller shall not issue a warrant in payment of the salary of any such employee for any month unless and until the affidavit required herein has been filed for said previous month."

■ Petitioners do not question the power of the Legislature to enact general legislation prescribing a duty to furnish unofficial copies of court opinions and records, and prescribing the circumstances under which they shall be furnished, and fixing the amount to be charged therefor. It is their contention, however, that such legislation would be "general legislation," and could not therefore constitutionally be appended to another enactment on a different subject,—that is, the subject of appropriations. The inhibition of the Texas Constitution cited is:

"No bill (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed." (Art. III, Sec. 35.)

That the fixing of official fees is a matter of general legislation, and is a "subject" of general legislation within the meaning of Article III, Section 35, above, cannot be questioned. There are many such enactments in our statutes. These statutes have been strictly construed against allowing a fee by implication, as regards both the fixing of the fee and the officer entitled thereto. McLennan County v. Boggess, 104 Texas 311, 137 S. W. 346. For example, in a case in which the duty was imposed on a district clerk to prepare a copy of a citation, but no fee was fixed therefor, he was held not to be entitled to a fee for such service. Hallman v. Campbell, 57 Texas 54. And in State v. Moore, 57 Texas 307, a county attorney was held to have the power and duty to recover certain money for the State, and it was provided that he should receive a certain commission on such recoverey. But because the Legislature had not set the amount of the fee, it was held that he could recover nothing. In that case Mr. Justice Stayton said: "It is not believed that any well considered case can be found in which a public officer has been permitted to collect fees unless the same are provided for, and

the amount thereof declared by law." We therefore hold that the fixing of fees for furnishing unofficial copies of opinions of the Courts of Civil Appeals, and the disposition of such fees, are matters of general legislation, and are "subjects" within the meaning of Article III, Section 35, of the Texas Constitution.

Similarly, the appropriating funds to be paid from the State Treasury is a "subject" within the meaning of Article III, Section 35, of our Constitution. Therefore, since Article III, Section 35, provides that, "No bill * * * shall contain more than one subject * *," that portion of the Appropriation Bill setting out for the first time matters not germane thereto, and dealing with general legislation on the different and wholly unrelated "subject" of fees charged by petitioners for unofficial copies, and prescribing the disposition of such fees, is in conflict with the mandate of Article III, Section 35, and is unconstitutional. State v. Steele, 57 Texas 200; Linden v. Finley, 92 Texas 451, 49 S. W. 578; and see opinions of the Attorney General of June 18, 1923, of September 26, 1929 (No. 2787), of October 17, 1933, and of August 26, 1935.

It will be noted that Section 9 of the Appropriation Bill for 1945 contains the following:
"If any section, sentence, clause, or part of this Act shall, for any reason, be held to be invalid, such decision shall not affect the remaining portions of this Act, and it is hereby declared to be the intention of the Legislature to have passed each sentence, section, clause, or part thereof, irrespective of the fact that any other sentence, section, clause, or part thereof may be declared invalid."

The only part of Section 3 of the Act which is before the Court is that dealing with fees or moneys received for unofficial copies of opinions, or other like documents, and the affidavit dealing therewith. No other portion of the Act is before the Court for construction, and we express no opinion on the portions not involved here.

■ There being no statutory duty requiring petitioners to furnish uncertified, unofficial copies of opinions of the Courts of Civil Appeals, no statute fixing any fee for such services, and no valid statute requiring that money received therefor be deposited in the State Treasury, there is no debt owing by petitioners to the State. Since petitioners are not required to account to the State Treasurer, under the existing statutes, for such receipts, they cannot be required to execute an affidavit

that such funds have been deposited in the State Treasury as a condition for the delivery of their monthly salary warrants.

The mandamus prayed for by petitioners is granted.

Opinion delivered February 13, 1946.