

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

January 31, 1950

Hon. C. H. Cavness
State Auditor
Capitol Station
Austin, Texas

Opinion No. V-993

Re: Construction and interpretation
of H.B. 321, Acts 51st Leg., 1949,
Ch. 553, p. 1070.

Dear Sir:

You have requested an opinion regarding the construction and interpretation of House Bill 321, Acts 51st Legislature, 1949, Ch. 553, p. 1070, which is an act making appropriations for the support, maintenance, and improvement of State hospitals and special schools of this State and prescribing certain regulations and restrictions in respect to the expenditure of these appropriations. Your request reads as follows:

"We shall appreciate your interpretation of the following:

" 1. House Bill No. 321, General Provisions, Section 13(b). '. . . No position shall be supplemented or be paid more than a specific amount as set by the Board out of any other funds belonging to said institution or the State; . . . No salary shall be paid to any person unless such person actually discharges assigned duties . . . . It is further provided that employees who are required by law to render services to wards of the State may charge for services rendered to others and retain such portion of said charges as may be allowed by rules and regulations of the Board.'

" (a) Does the above legally provide that physicians, surgeons, oculists, dentists, and other professionals as well as barbers, cosmetologists, etc., regularly employed on full-time State appropriated salaries by State institutions can render services to institutional employees and other persons during regular institutional working hours, using institutional facilities and supplies, or their own personal supplies, and can legally charge, collect and retain fees for their personal use and benefit?

"(b) Under existing laws, can the State Hospitals and Special Schools, and the Correctional Schools legally provide hospitalization, medical, surgical, dental and other

Hon. C. H. Cavness, page 2 (V-993)

professional care, and furnish drugs and hospital supplies to institutional employees with or without charge?

"2. Section 20. Emoluments of Board Employees. 'In recognition of salaries paid within institutions and in order to attract and retain qualified supervisory personnel on the staff of the Board, the Board is hereby authorized to allow emoluments to such employees out of the funds and facilities of one or more of the institutions in Travis County.'

"(a) Does the above provision legally authorize the Board to furnish housing, provisions, meals, laundry service, etc., for its employees at their headquarters in the City of Austin?

"(b) Could such 'Travis County' funds be used to pay such emoluments to Board employees working at its institutions in Counties other than Travis?"

In a supplementary letter relating to the above opinion request, you have advised us of the following:

"1. During the past fiscal year (and so far as we know, up to the present time) a superintendent has been orally authorized by a member of the staff of the Board to perform operations and to otherwise treat institutional employees, and to permit his staff of physicians to do likewise, while regularly employed by the State, using State facilities, drugs, etc., and to charge employees for such services at regular rates. These employees have been hospitalized in the State institutions, with the institution billing the insurance company that provides the State employees' group insurance for the physician's fees, and for hospitalization separately (more work done by institutional employees for the personal benefit of the physicians). The physicians receive their fees, and the institutions receive the hospitalization fees.

"2. For some years past, and at present, certain of the eleemosynary institutions, with oral sanction of the Board, have permitted physicians, dentists, barbers, cosmetologists to serve employees and others while regularly employed by the State, using State owned facilities, supplies, etc., to charge nominal fees for such services, and to retain such fees (or in some cases a part of the fees) for their own use and benefit.

"3. For some years past, and at the present time, all of the eleemosynary institutions have been, and are,

Hon. C. H. Cavness, page 3 (V-993)

providing hospitalization, medical, dental, and other professional care, and drugs and hospital supplies to institutional employees without charge. This is now for employees who are not covered by group insurance, but it has happened in some cases that are covered by such insurance.

"4. One of the institutions has employed at the same salary two dentists on the part-time basis, neither of whom spend much time in performing services for wards of the State (at present this institution has in its employ one full time dentist). One of the part-time dentists for more than two years received certain _full_ emolument allowances specified for full-time employment. At present this part-time dentist is receiving a $90.00 per month 'provisions allowance.' The other part-time dentist is receiving no such emoluments.

"5. For a short time past and at present, one State employee on the staff of the Board for State Hospitals and Special Schools has been and is furnished with a residence located on the grounds of one of the institutions, and is given all other emoluments provided for the superintendents of the various institutions. This employee's salary is higher than a superintendent's salary."

The information which you have furnished us presents the following questions:

1. Can the Board of State Hospitals and Special Schools authorize physicians, dentists, oculists, barbers, cosmetologists, and other professional personnel regularly employed at State hospitals and special schools to render services to persons other than patients of such institutions, and to what extent, if any, can the Board determine the amount and disposition of fees charged for such services?

2. Does the Board have authority to authorize hospitals and schools under its direction to furnish hospitalization and medical, dental, and other professional care to institutional employees without charge?

3. Does the Board have authority to authorize hospitals and schools under its direction to furnish hospitalization and medical, dental, and other professional care to institutional employees when a charge is made?

4. Does the Board have authority to furnish housing, provisions, board, and laundry to its staff employees in Travis County?

514

5. Does the Board have authority to furnish housing, provisions, board, and laundry to its staff employees who are working at institutions located in counties other than Travis?

Before discussing the questions presented, we will note certain statutes which are pertinent in construing and interpreting House Bill 321, Acts 51st Leg., R.S. 1949, Ch. 553, p. 1070.

Article 3174, Vernon's Civil Statutes, provides:

"Each eleemosynary institution established by law shall be managed and controlled in accordance with the provisions of this title. The general control, management and direction of the affairs, property and business of such institutions is vested in the State Board of Control."

Article 693, V.C.S., defines the powers of the Board of Control in respect to eleemosynary institutions. This article provides, in part:

"The Board of Control shall have power:

"1. To makes rules and regulations for the government of the State eleemosynary institutions, not inconsistent with the constitution and laws.

"2. To appoint all officers and employees of such institutions and fix their salaries and wages . . . ."

"7. It shall exercise a careful supervision over the general operations of such institutions and control the expenditures, and direct the manner in which their revenue shall be disbursed. . . ."

House Bill 239, Acts 51st Leg., R.S. 1949, Ch. 157, p. 324, codified as Article 3174a, V.C.S., provides that State hospitals, schools, and other institutions which have been known as "Eleemosynary Institutions" shall hereafter be known and designated as "Texas State Hospitals and Special Schools."

House Bill 1, Acts 51st Leg., R.S. 1949, Ch. 316, p. 588, codified as Article 3174b, created the Board for Texas State Hospitals and Special Schools. Section 2 of this act gives to this new board management and control of State hospitals and special schools:

" . . . Effective September 1, 1949, the control and management of, and all rights, privileges, powers, and duties incident thereto including building, design, and construction of the Texas State Hospitals and

Special Schools which are now vested in and exercised by the State Board of Control shall be transferred to, vested in, and exercised by the Board for Texas State Hospitals and Special Schools . . . ."

We see that by virtue of Article 3174b, V.C.S., the Board for Texas State Hospitals and Special Schools succeeds to the powers of management and control of hospitals and schools formerly vested in the Board of Control. These powers of management and control are defined in Article 693, V.C.S., supra. Therefore, there exists general legislation which sets out powers of the new Board in respect to management and control of the hospitals and special schools under its jurisdiction.

In answer to question (1) regarding the Board's authority to authorize physicians, dentists and other employees of State institutions to render professional services to persons other than patients of such institutions, we must turn to section 13(b) of H.B. 321, supra, the current Appropriation Act for State hospitals and special schools. This section reads, in part, as follows:

"The number of employees at each institution and the salary of each shall be fixed by the Board. No position shall be supplemented or be paid more than a specific amount as set by the Board out of any other funds belonging to said institutions or the state, . . . No salary shall be paid to any person unless such person actually discharges assigned duties . . . . It is further provided that employees who are required by law to render services to wards of the State may charge for services rendered to others and retain such portion of said charges as may be allowed by rules and regulations of the Board." (Emphasis ours)

Section 13(b) is a part of a general rider in the current Appropriation Act for State hospitals and special schools. If section 13(b) purports to amend existing law, it is unconstitutional under Article III, Section 35, Constitution of Texas, which prohibits the enactment of subjects of general legislation in an Appropriation Act. Moore v. Sheppard, 144 Tex. 537, 192 S.W.2d 559 (1946).

In keeping with the established rule that a construction which renders a statute valid is favored over a construction which would render the statute invalid, we are of the opinion that in enacting section 13(b) the Legislature did not intend to amend existing law.

It is our opinion that section 13(b) does not purport to authorize and could not authorize superintendents of State hospitals for the

Hon. C. H. Cavness, page 6 (V-993)

treatment of mental illnesses to engage in private practice, be-
cause of Section 1 of Article 3184, V.C.S., as amended, Acts 48th
Leg., 1943, Ch. 65, Sec. 1, p. 82, which provides that:

"The Superintendent of each State Hospital
shall be a married man, a skilled physician author-
ized to practice medicine in Texas, and shall have
not less than five (5) years experience in the treat-
ment of mental diseases. He shall reside at the
hospital with his family and shall devote his time
exclusively to the duties of his office, . . . ."
(Emphasis ours)

Since the above quoted section of Article 3184 speaks
in terms of "State Hospitals" and prescribes that the superinten-
dents shall have experience in the treatment of mental diseases,
we conclude that this section of the statute applies only to the State
institutions designed for the treatment of mental illnesses and does
not apply to other institutions under the jurisdiction of the Board
for State Hospitals and Special Schools. However, Article 3202c,
V.C.S., Acts 51st Leg., R.S., 1949, Ch. 493, p. 914, relating to super-
intendents of schools for the blind and deaf provides, in part:

"Sec. 3. The Superintendents of both the Texas
School for the Blind and the Texas School for the Deaf
shall reside at the respective school of which he is
superintendent and shall devote his time exclusively
to the duties of his office, . . . ." (Emphasis ours)

In view of the particular wording of Articles 3184 and
3202c, supra, it follows that the superintendents of the State mental
hospitals, the Texas School for the Blind, and the Texas School for
the Deaf, could not engage in private practice in any professional
field in which they might be licensed. We do not hold that the duties
of the office of superintendent could never encompass the performance
of professional services for others than wards of the State, but we hold
that these superintendents who are required to devote all of their time
to the duties of their offices could never occupy the position of an inde-
pendent contractor and thus receive separate compensation for services
so rendered.

There is no statute which requires superintendent of State
institutions other than State mental hospitals and the schools for the
blind and the deaf to devote their time exclusively to their respective
offices. Neither is there any statute which requires employees of State
hospitals and special schools, other than the superintendents hereto-
fore mentioned, to devote their time exclusively to the duties of their
respective jobs with the State.

Consequently, you are advised that before as well as after the enactment of H.B. 321, supra, employees of State hospitals and special schools (except superintendents to whom Article 3184 and Article 3202c apply) could be and may now be permitted to perform professional services for persons other than wards of the State and to make charges therefor, acting in such instances as independent contractors to perform said services. This is in accord with our expression in Attorney General's Opinion No. V-303, dated July 15, 1947, wherein it was held that a full-time employee of the Highway Department was not prohibited by existing law from working for others in the capacity of an independent contractor. However, in this Opinion it was also pointed out that the employee was obligated to perform fully his duties to the Highway Department in order to comply with the Appropriation Act requiring that no salary should be paid to any person unless such person actually discharged his assigned duties. It was further observed that whether or not the employee fully performed his assigned duties was a matter for the officials of the Highway Department to determine.

The current Appropriation Act for State hospitals and special schools also stipulates that no salary shall be paid to any person unless such person actually discharges assigned duties. Therefore, employees who render professional services to persons other than wards of the State must also actually discharge their assigned duties with the State institutions employing them. The responsibility for determining whether such duties have been discharged lies with the Board for State Hospitals and Special Schools.

Section 13(b) of H.B. 321, supra, after providing that employees of State hospitals and special schools may charge for services rendered to persons other than wards of the State, further stipulates that such employees may "retain such portion of said charges as may be allowed by rules and regulations of the Board." As heretofore observed, we do not construe Section 13(b) as an attempt to change existing law or to enact a subject of general legislation. We have also observed that in performing professional services for persons other than wards of the State and in receiving pay therefor, employees of State hospitals and special schools are acting in the capacity of independent contractors. As independent contractors such employees are entitled to retain all charges for services. H.B. 321, being a general rider, does not change this rule. Therefore, we conclude that the Legislature in enacting Section 13(b) of H.B. 321 intended to authorize the Board to require employees to turn over to the institution only such portion of charges made for services as will reasonably compensate the institution for the use of its facilities if same are used by the employee in the rendering of professional services to persons other than wards of the State. Accordingly, you are advised that if an employee of a State institution renders professional services to persons other than wards of the State, he is entitled to retain all the charges

Hon. C. H. Cavness, page 8-(V-993)

made for such service, except such portion as the Board may prescribe as reasonable compensation for the use of State facilities.

In considering the authority of the Board to authorize institutional employees to render professional services to persons who are not wards of the State, we have assumed that in some instances these employees will use State-owned facilities in rendering such services. For example, we have assumed that physicians will use offices at the institution and barbers will use equipment belonging to the institution. We think such use of State-owned facilities by employees is contemplated in the contract of employment between the institution and these employees. However, we do not advise that physicians could hospitalize their private patients in State hospitals. There are statutory provisions which prescribe procedure for admittance to the various State hospitals.[1] We think that no person exeept an institutional employee (under certain circumstances hereinafter discussed) is entitled to hospitalization in a State institution unless such requirements for admittance are met. Therefore, physicians using State-owned facilities in the treatment of patients (other than State wards) are, in our opinion, limited in the use of such facilities, as more particularly pointed out in answer to question (3), infra.

Question (2) presents the question of whether the Board for Texas State Hospitals and Special Schools may lawfully authorize State institutions to provide hospitalization or medical, dental, or other professional treatment to employees without charge. We think not.

Free hospitalization to the employees is not a part of the perquisites authorized to employees by Sec. 12 of H.B. 321, supra. This Section reads as follows:

"Sec. 12. Perquisites of Employees: (a) Under written direction of the Board, institutional employees may receive such perquisites as the Board may by rule and regulation prescribe."

Although the word "perquisites" in its literal sense may be broad enough to include medical and other professional treatment, we do not think the Legislature intended in this instance that the word should be given so broad a construction. We think that the Legislature intended the word "perquisites" to include only housing, board, provisions, fuel, lights, water, and laundry. We have reached this conclusion from an examination of previous appropriation acts for eleemosynary institutions.

For example, S.B. 374, Acts 50th Leg., 1947, Ch. 330, p. 566, 611, contains the following reference to "perquisites":

---

[1] Arts. 3184-3263c, incl., V.C.S.

Hon. C. H. Cavness, page 9 (V-993)

"Perquisités of Employees. (a) When it is
provided that the family of a superintendent, of-
ficer, or employee of any of said institutions, are
permitted to live at said institution, and are to be
furnished with board, fuel, lights, laundry, water,
housing, or any of said items, the word 'family,'
shall be construed to mean the immediate family
of said superintendent, officer, or employee, in-
cluding himself, wife and legally dependent chil-
dren."

Furthermore, in the 1947 Appropriation Act, under the
heading "Salaries," there are several provisions similar to the fol-
lowing:

"(Superintendent, Assistant Superintendent
and all full-time physicians, phychiatrists and Den-
tists to receive housing, provisions,utilities, and
laundry for self and family.)"

At no place in the 1947 Act can be found any provision
authorizing hospitalization or medical or other professional treat-
ment as a part of an employee's emolument.

The 1945, 1943, and 1941 Appropriation Acts for eleemosy-
nary institutions [2] are practically idéntical to the 1947 Act in respect
to enumerating perquisites of employees. From this general course
of legislation in which the word "perquisites" has been used only in
connection with housing, provisions, board, water, light, fuel, and
laundry, we are of the opinion that the 51st Legislature in using the
term "perquisites" intended it to include only such items as those
enumerated in previous appropriation enactments and did not intend
the term "perquisites" to include hospitalization or medical or other
professional treatment.

You are accordingly advised that the Board may not law-
fully authorize State  hospitals to provide free hospitalization, medical
care or dental or other professional treatment to employees.

We next consider question (3) with reference to whether the
Board for State Hospitals and Special Schools  may authorize hospitals
and schools under its direction to provide hospitalization, medical care
and other professional treatment to employees where a charge is made.

We have heretofore pointed out that there are statutory pro-
visions which prescribe requirements for admittance to State hospitals
and schools. [3]  There is nothing in these statutes to indicate that compliance

2    H.B. 206, Acts 40th Leg., R.S. 1945, Ch. 237, p. 323; H.B. 666,
     Acts 48th Leg., R.S. 1943, Ch. 398, p. 726; S.B. 402, Acts 47th Leg.,
     R.S. 1941, Ch. 567, p. 939.

3    See statutes listed in footnote  1, page 8.

with the prescribed requirements for admittance is not mandatory. Therefore, you are advised that ordinarily an employee of a State hospital or school may not receive hospitalization in the State institution in which he is employed even though a charge therefor is made, unless such employee complies with the statutory requirements for admittance. However, we do not say that under no condition can such hospitalization be rendered. For example, we do not hold that under unusual or emergency circumstances an employee is prohibited from receiving hospitalization from the institution. Some of the institutions are located several miles from the nearest community. In the event an employee should require immediate emergency hospitalization, it is unreasonable to assume that he should be denied facilities in the institution.

We have been advised that a number of employees at each institution live on the premises as an accomodation to the institution. Some of the employees are quartered in buildings located a considerable distance from other institutional facilities. If one of these employees becomes ill and is confined to his bed, he has no access to other institutional facilities, particularly meals, to which he is entitled. In addition he cannot be given adequate attention. Under such circumstances we think it would be permissible under existing law to allow this employee to use institutional hospital facilities provided a charge is made therefor. Since this employee resides at the institution, the institution can safeguard its employee's welfare to this extent. We believe that it is the indiscriminate use of institutional hospital facilities by employees that is unauthorized.

In respect to other professional treatment, we find no authorization for employees who have not complied with the requirement for admittance to obtain and pay for professional treatment in the State institution in which they are employed. The State is not engaged in the profession of medicine or cosmetology. On the other hand, we have concluded that physicians, barbers, and other employees acting as independent contractors, may use, to some extent, institutional facilities in the treatment of private patients, the use of such facilities being an incident to the contract of employment between the institution and the professional employees. Institutional employees desiring professional attention are not precluded from receiving same from other employees acting as independent contractors but using institutional facilities. The charges made for such services are of no interest to the institution or the State, except that where institutional facilities are used, the Board is authorized to prescribe reasonable compensation for the use of State-owned facilities from the professional persons rendering the services.

Accordingly, you are advised that except in unusual circumstances the Board cannot authorize hospitals and schools to furnish hospitalization and professional treatment to employees even where a charge is made therefor; however, an employee may receive

Hon. C. H. Cavness, page 11 (V-993)

professional services from another institutional employee who is acting as an independent contractor but who is to a limited degree using institutional facilities.

In answer to question (4) we think that H.B. 321 specifically authorizes employees of the staff of the Board for State Hospitals and Special Schools to receive emoluments out of the funds and facilities of one of the institutions in Travis County. Section 20, H.B. 321, reads as follows:

"Emoluments of Board Employees: In recognition of salaries paid within institutions and in order to attract and retain qualified supervisory personnel on the staff of the Board, the Board is hereby authorized to allow emoluments to such employees out of the funds and facilities of one or more of the institutions in Travis County."

The answer to question (5) is also found in the above quoted section. This section does not distinguish between Board employees working in Travis County and those working in other counties. Under this section it appears immaterial where the Board employee is working. Therefore, we advise you that the Board is authorized to allow emoluments out of funds and facilities of one or more of the institutions in Travis County to Board employees who are working at institutions outside of Travis County.

## SUMMARY

The Board for Texas State Hospitals and Special Schools can authorize physicians, dentists, barbers, and other professional employees at hospitals and schools under the Board's supervision to render professional services to persons other than wards of the State, provided such employees fully discharge assigned duties to the State. In rendering such services the employee does so in the capacity of an independent contractor. If State-owned facilities are used in performing such services, the Board is authorized to determine and collect a reasonable charge as reimbursement to the State.

The Board has no authority to authorize hospitals and schools under its direction to render free hospitalization or medical and other professional services to employees of such institutions. Except in unusual circumstances, such as in case of an emergency, employees of State hospitals and special schools may not be hospitalized in one of these

institutions even though a charge is made.

The Board may give emoluments to its staff employees out of the funds and facilities of any of the institutions in Travis County under the Board's supervision. Emoluments out of the funds and facilities of State hospitals and special schools in Travis County may be given to any employee of the Board, even though the employee is working at an institution outside of Travis County.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

By Pat T. Peyton, Jr.

Charles D. Mathews          Pat T. Peyton, Jr.
Executive Assistant                    Assistant

WEG:v