

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 23, 1951

Hon. D. K. Woodward, Jr., Chairman
The Board of Regents
The University of Texas
Kirby Building
Dallas 1, Texas

Opinion No. V-1252

Re: Constitutionality of ap-
propriating sums from the
Available University Fund
to pay county taxes on en-
dowment lands set apart
for The University of
Texas.

Dear Sir:

Your request relates to the constitutionality
of an appropriation from the Available University Fund
to pay county taxes on endowment lands of The University
of Texas. In your factual recitation you state that
this is the first occasion the Legislature has seen fit
to appropriate from the Available University Fund for
payment of county taxes. Heretofore, since the authori-
zation to levy and collect such tax in 1930, the Legis-
lature has appropriated from the General Fund for such
purposes.

Section 10, Article VII, Constitution of Texas,
provides:

"The Legislature shall as soon as prac-
ticable establish, organize and provide for
the maintenance, support and direction of a
University of the first class, to be located
by a vote of the people of this State, and
styled, 'The University of Texas', for the
promotion of literature, and the arts and
sciences, including an Agricultural, and Me-
chanical department."

Section 11, Article VII, Constitution of Texas,
establishing the "Permanent University Fund," is as fol-
lows:

"In order to enable the Legislature to perform the duties set forth in the foregoing Section, it is hereby declared all lands and other property heretofore set apart and appropriated for the establishment and maintenance of the University of Texas, together with all the proceeds of sales of the same, heretofore made or hereafter to be made, and all grants, donations and appropriations that may hereafter be made by the State of Texas, or from any other source, except donations limited to specific purposes, shall constitute and become a Permanent University Fund. And the same as realized and received into the Treasury of the State (together with such sums belonging to the Fund, as may now be in the Treasury), shall be invested in bonds of the United States, the State of Texas, or counties of said State, or in School Bonds of municipalities, or in bonds of any city of this State, or in bonds issued under and by virtue of the Federal Farm Loan Act approved by the President of the United States, July 17, 1916, and amendments thereto; and the interest accruing thereon shall be subject to appropriation by the Legislature to accomplish the purpose declared in the foregoing Section; provided, that the one-tenth of the alternate Sections of the lands granted to railroads, reserved by the State, which were set apart and appropriated to the establishment of the University of Texas, by an Act of the Legislature of February 11, 1858, entitled, 'An Act to establish the University of Texas,' shall not be included in, or constitute a part of, the Permanent University Fund."

The income derived from the investment of the Permanent University Fund is known and designated as the "Available University Fund." Att'y Gen. Op. V-818 (1949).

All lands endowed to The University of Texas were made subject to taxation for county purposes by Section 16(a), Article VII, Constitution of Texas (adopted November 4, 1930), which provides:

"All land mentioned in Sections 11,
12, and 15 of Article VII, of the Consti-
tution of the State of Texas, now belong-
ing to the University of Texas shall be
subject to the taxation for county pur-
poses to the same extent as lands private-
ly owned; . . ."

Subsequently, Article 7150c, V.C.S., was en-
acted in 1931 (Acts 42nd Leg., R.S. 1931, ch. 93, p. 136),
and provides in part as follows:

"Sec. 1.   All the lands set apart
for the endowment of the University of
Texas by Section 15 of Article 7 of the
Constitution of 1876, and by Chapter 72
of the Acts of the Regular Session of
the 18th Legislature, which are now un-
sold, are hereby declared to be subject
to taxation for county purposes in the
counties in which they are located, to
the same extent as lands privately owned
in said counties.

"Sec. 6.   It shall be the duty of
the Comptroller of Public Accounts to
issue warrants upon the General Fund to
pay taxes due each county, beginning
with taxes assessed for the year 1931,
and annually thereafter; said warrants
to be issued and mailed to the several
counties within the time as now provided
by law for the payment of county taxes
on privately owned lands."

To provide for this tax payment to counties,
Section 3 of Article V of House Bill 426, Acts 52nd Leg.,
1951 (General Appropriation Bill) provides in part:

"Sec. 3.   In accordance with the
Constitutional provision that taxes for
county purposes only be paid to counties
in which are located endowment lands set
aside to The University of Texas by the
Constitution of the State of Texas and
the Act of 1883, there is hereby appro-
priated to the State Comptroller of Public

Accounts out of the Available University
Fund for the payment of taxes to such
counties for county purposes only upon
said University-owned land the sum of
not to exceed One Hundred Forty-three
Thousand and Fifty-six Dollars ($143,056)
for the fiscal year ending August 31,
1952, and the sum of Seventy-nine Thou-
sand, Two Hundred and Fifty-eight Dollars
($79,258) for the fiscal year ending Au-
gust 31, 1953. Provided, however that
any moneys appropriated in this Article
may be used for the purpose of paying
current and delinquent taxes that have
accrued, or may accrue, under the pro-
visions of the above-mentioned Constitu-
tional Amendment. It is further provided
that any balances remaining in the moneys
appropriated in this Section for the year
ending August 31, 1952, may be carried for-
ward and added to the appropriation for
the second year of the biennium, that is,
for the fiscal year ending August 31, 1953."

It is immediately obvious that in the forego-
ing language an attempt is made to effect a change in
Article 7150c (general law) by a rider to the General
Appropriation Bill. It is well settled that an appro-
priation bill cannot repeal or amend a general law.
Moore v. Sheppard, 144 Tex. 537, 192 S.W.2d 559 (1946);
Linden v. Finley, 92 Tex. 451, 49 S.W. 578 (1899);
State v. Steele, 57 Tex. 200 (1880); Att'y Gen. Ops.
O-2573 (1940); O-4788 (1942); V-412 (1947); V-894 (1949).

A general law, Article 7150c, specifically
provides for payment of these taxes out of the General
Fund. A rider in the General Appropriation Bill in con-
flict with the general law is a subject of general leg-
islation and cannot constitutionally appropriate money
from a fund different from that designated by the gen-
eral law. So long as Article 7150c remains in effect,
money for payment of county taxes must be appropriated
from the General Fund and cannot be appropriated from
the Available University Fund. Therefore the attempted
appropriation inquired about in your request is invalid.
As hereinafter pointed out, even an amendment of the
general law to provide for payment out of the Available
University Fund would be subject to another constitu-
tional question.

The Available University Fund, which is the income from the investment of the Permanent University Fund, was created for a specific purpose, that is, for the maintenance, support and direction of a university of the first class (Tex. Const., Art. VII, Sec. 10). Section 11 of Article VII provides that the interest accruing from bonds shall be subject to appropriation by the Legislature to accomplish the purpose declared in Section 10 of Article VII of the Constitution of Texas. Section 16(a) of Article VII of the Constitution of Texas, authorizing the payment of county taxes on University endowment lands, was not adopted until the year 1930, and nothing is contained therein conflicting with the original purpose of the Available University Fund as prescribed in Section 10 of Article VII. Moreover, the Available University Fund is a special fund within the meaning of Section 7 of Article VIII of the Constitution of Texas, which prohibits the Legislature from diverting any special fund from its purpose. State v. Hatcher, 115 Tex. 332, 281 S.W. 192 (1926). Therefore, a serious question is presented as to the constitutionality of this attempted appropriation. We need not pass upon this additional question at the present time, but it should be noted that the Legislature in 1933 was of the opinion that the payment of county taxes on the endowment lands of the University out of the Available University Fund would require a constitutional amendment. This was evidenced by the passage of House Joint Resolution No. 30. However, this proposed amendment was not adopted at the November election in 1933. Thereafter, all appropriations including the biennium ending August 31, 1951, for the payment of county taxes on endowment lands were made from the General Fund.

On the basis of its conflict with the general law (Article 7150c), we conclude that the portion of House Bill 426 relating to the appropriation of funds from the Available University Fund to pay county taxes on endowment lands of The University of Texas is unconstitutional. Article 7150c requires that these taxes be paid from the General Fund.

## SUMMARY

The "Available University Fund," consisting of income derived from investment of the Permanent University Fund, may not be utilized for the payment of county taxes on

endowment lands of The University of Texas.
A general law, Article 7150c, requires that
these taxes be paid from the General Fund,
and this law cannot be changed or amended
by the General Appropriation Bill.  Tex.
Const., Art. VII, Secs. 10, 11; Moore v.
Sheppard, 144 Tex. 537, 192 S.W.2d 559
(1946); Linden v. Finley, 92 Tex. 451, 49
S.W. 578 (1899).

APPROVED:

Bruce Allen
County Affairs Division

Everett Hutchinson
Executive Assistant

Price Daniel
Attorney General

BW:jmc:em

Yours very truly,

PRICE DANIEL
Attorney General

By Burnell Waldrep
         Assistant