

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

October 17, 1957

Mr. Raymond W. Vowell,
Acting Executive Director,
Board for Texas State Hospitals
  and Special Schools,
Austin, Texas

Opinion No. WW-265.

Re: Validity of Sections 7a
and 7b of Article II,
H.B. 133, Acts 55th
Legislature, 1957, Ch.
385, p. 926 (General
Appropriation Act, 1957).

Dear Mr. Vowell:

You have presented for our consideration the question
of the validity of Sections 7a and 7b of Article II, H.B. 133,
Acts 55th Legislature, 1957, Ch. 385, p. 926. We previously
held in Opinion WW-96 that Section 7 of Article II of the Bill
as originally introduced in the Senate and House of Representa-
tives was invalid as containing within the General Appropria-
tion Bill provisions which are the subject of general legisla-
tion.

The Bill originally introduced was amended to such
an extent that we do not think Opinion WW-96 controls the deci-
sion in this opinion. Although dealing with the same general
subject matter, the Appropriation Act as finally passed differs
markedly from the Bill as originally introduced.

In Opinion WW-96 this office held that the General
Appropriation Bill may direct appropriation of money and may
detail, limit or restrict the use of funds so appropriated
where such provisions are necessarily connected with and inci-
dental to the appropriation and use of the funds. Conley v.
Daughters of the Republic of Texas, 106 Tex. 80, 156 S.W. 197
(1913).

Such provisions concerning accounting procedures
and directions as to the method of expenditure and reimburse-
ment of certain funds are permissible and proper so long as
they do not conflict with the general law on the subject.
Attorney General's Opinion V-1254. However, general legisla-
tion constitutes a separate subject and cannot be included
within a General Appropriation Bill, and a rider to a general

appropriation bill cannot repeal, modify or amend an existing general law.  Moore v. Sheppard, 144 Tex. 537, 192 S.W. 2d 559 (1946); Linden v. Finley, 92 Tex. 451, 49 S.W. 578 (1899); State v. Steele, 57 Tex. 203 (1882); Attorney General's Opinion No. V-1254.

Section 7 concerns the admission and transportation of non-residents and aliens.  Subsection (a) of Section 7 provides as follows:

> "None of the moneys appropriated
> by this Article may be expended for the
> training or medical treatment of any
> student or patient who is not a citizen
> or resident of this State.  For the
> purpose of this provision, affidavits
> from two reputable persons shall be
> deemed adequate evidence of citizenship
> or residency."

If this provision amounts to an enactment of the Legislature which is properly the subject of general law, it will be invalid under the above cited cases.  It is apparent that by this provision the Legislature has evidenced its intent that no money be expended for a certain purpose i.e., the training or medical treatment of non-residents.

In Linden v. Finley, supra, the Legislature provided that district attorneys on a fee basis should be paid only one fee where the defendant was convicted on several cases and received concurrent sentences.  The general law provided for fees for every case in which a conviction was had by the District Attorney regardless of the nature of the sentence.  The Court held the provisions of the Appropriation Bill valid, even in the face of the general fee law, and in so holding, stated:

> ". . . But the provision under
> consideration does not purport to change
> the laws existing at that time which pro-
> vide what fees the officers therein named
> shall receive from the state.  It simply
> acts upon the appropriation for the two
> years beginning March 1, 1897, and limits
> the payment of fees in felony cases to
> convictions in which the term of the
> sentence is not made to run concurrently
> with the term of a previous sentence.
> There is nothing in the constitution
> which prohibits the legislature from

> limiting any appropriation by any apt
> words expressive of their intent.
> Should they even fail to appropriate a
> salary fixed by the constitution, the
> officer affected by it is without remedy
> before the courts. However clear and
> however just the demand against the state,
> without an appropriation the comptroller
> is not authorized to draw his warrant for
> its payment; and, when the legislature
> says that a certain class of claims shall
> not be paid from an appropriation, they
> are excepted from the appropriation, and
> cannot lawfully be paid from the treasury.
> . . . Under our constitution, without an
> appropriation no money can be drawn from
> the treasury. . . ."

It is our opinion that Section 7(a), above quoted, denies any appropriation for the performance of a statutory duty imposed by general law, but it does not attempt to change that general law. Accordingly, under the _Linden_ case, we hold Section 7 (a) to be valid.

Subsection (b) and its constituent parts, (1), (2) and (3), provide as follows:

> "The cost of deporting any non-resident
> or alien may be paid by any of the institu-
> tions named in this Article from appropriated
> funds available to such institutions. It is
> further provided that expenditures from appro-
> priation items designated 'General Operating
> Expenses' and 'other operating expenses' in
> this Article, for the purposes of deporting
> non-residents or aliens or of returning Texas
> patients or students from other states, shall
> be governed by the following additional rules
> and procedures:

> "(1) In order to conserve the use of
> personnel and reduce the costs of deporting
> patients, the superintendent of a hospital
> or institution named in Article II which is
> deporting patients may also include in his
> scheduled deportation trip patients approved
> for deportation from other State hospitals
> and institutions and be reimbursed by such
> other hospitals and institutions for their

pro rata shares of the costs incurred. All such reimbursements are hereby appropriated to such hospital or institution for 'General Operating Expenses' or 'other operating expenses'.

"(2) To simplify the disbursement of funds for deportation purposes, the Hospital Board and hospitals or institutions under its jurisdiction may request commercial transportation companies to furnish the required transportation of patients and of attendants designated to accompany such patients. The cost of such transportation services are to be paid upon submission of purchase voucher to the Hospital Board or to the hospital or institution under its jurisdiction requesting such transportation services.

"(3) The mental health agency of any other State or any institution operated thereunder which is deporting patients to Texas State hospitals, may be paid a pro rata share of any expenses incurred when patients from Texas State Hospitals are taken back to their state of residency by personnel of the aforementioned agency upon their return trip."

Subsection (b) as a whole concerns the accounting, allocation, and reimbursement involved in transporting patients from Texas to the states of their residence. Subsection (b)(1) allows a messenger from one State hospital to transfer patients from other State hospitals along with patients from his own hospital where possible, the expenses of such trip to be allocated on a pro rata basis to the hospitals or schools whose patients were transported. As such, it is an accounting provision and is a proper subject for the General Appropration Bill.

Subparagraph (b)(2) authorizes the purchase of public commercial transportation, the cost of such transportation to be paid upon purchase vouchers to the Hospital Board. It is our opinion that this provision deals also with the accounting of funds expended for public transportation. It is a valid subject to be included in the Appropriation Bill.

Mr. Raymond W. Vowell, Page 5 (WW-265).

Subparagraph (b) (3) concerns the payment of a pro rata share of the expenses of a messenger from another state, who, after having brought patients from another state to Texas, takes patients back to that state on his return trip. This provision again deals with the means of expenditure of the funds so appropriated and constitutes a valid subject for an appropriation bill.

Therefore, we conclude that Subsection (a) of Section 7 of Article II, House Bill 133, Acts 55th Legislature, 1957, Ch. 385. p. 926 (General Appropriation Act, 1957) is valid, since the provision amounts to restricting the appropriation for a certain purpose, which action is within the prerogative of the Legislature. We further hold that Subsection (b) of Section 7 contains provisions and requirements, the subject matter of which is necessarily connected with and incidental to the appropriation made by the bill. We do not find any conflict between these provisions and the general legislation on the subject of non-resident inmates, patients or students. Therefore, we hold Section 7 to be valid in its entirety.

## SUMMARY

Subsection (a) of Section 7, Article II, H.B. 133, Acts 55th Legislature, 1957, Ch. 385, p. 926, is valid. Subsection (b) of Section 7, Article II, H.B. 133, Acts 55th Legislature, 1957, Ch. 385, p. 926, is valid.

Very truly yours,

WILL WILSON
Attorney General of Texas

By
John H. Minton, Jr.
Assistant

JHM:wam:pf

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman
T. C. Davis, Jr.
John Reeves
C. K. Richards
W. V. Geppert
APPROVED FOR ATTORNEY GENERAL
By: James N. Ludlum.