

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

September 25, 1959

Dr. L. R. Noyes, Executive Director
Texas Animal Health Commission
Room 1021, New State Office Building
Austin, Texas

Opinion No. WW-708

Re: Whether H.B. No. 4, third
called session, 56th Leg.,
permits the Texas Animal
Health Commission to in-
crease maximum salaries
and related questions.

Dear Dr. Noyes:

Your request for an opinion reads in part as follows:

"The Animal Disease Eradication Division, United States Department of Agriculture, will not recognize work done under Types I. or II. Brucellosis programs, unless such blood testing and/or vaccinations are performed by accredited veterinarians or laymen regularly employed by the Texas Animal Health Commission.

"In the event that Counties elect to participate in the Brucellosis programs and contribute funds, is our assumption correct that such funds shall be deposited with the State Treasurer to the credit of the Texas Animal Health Commission, to be used in the specified Counties?

"Assuming that Counties, or individuals, desire to participate in the brucellosis program by the contribution of funds, can such funds be used to increase the maximum salaries provided in the State Departmental Appropriation Bill?

"The appropriation allotted this Department for the biennium 1960-61 provides salaries for veterinary livestock market inspectors not to exceed $8.00 per day.

Dr. L. R. Noyes, page 2 (WW-708 )

"It is obvious that capable representatives cannot be employed at this pay scale, and this Department is wondering if the amount of $8.00 may be supplemented by contributions in an amount to adequately compensate representatives for the services performed at these livestock auction markets. The contributions would be made by the livestock market operators on the first day of each month, payable to the State Treasurer.

"It would, of course, be necessary that the contributions be kept in separate accounts for each livestock market, since the volume of live-stock handled at the various markets varies greatly, and the representatives of this Depart-ment would be paid accordingly.

"In the event that salaries may be supple-mented, as stated above, will it be permissible for the veterinarian selected to also accept fees for tests, vaccinations, etc., required under provisions of the livestock auction market bill in addition to his supplemented salary?

"At the present time there are twelve live-stock markets in Texas specifically approved by this Commission and the Animal Disease Eradica-tion Division for receiving cattle, in interstate commerce, in compliance with Federal brucellosis regulations.

"The Animal Disease Eradication Division has informed this Department that unless State funds are available to assume state-paid supervision of these markets their approval to receive cattle in interstate commerce will be withdrawn effective at the close of August.

"Since it will be impossible, under the appropriation made available to this Department, to maintain supervision at any livestock markets, may the Commission assume supervision of these approved markets which contribute funds, supple-menting our appropriation, and exclude other live-stock markets within the State that may desire approval for handling cattle in interstate com-merce but that do not offer to contribute funds to supplement our appropriation for this work?"

House Bill 187, Acts of the 56th Legislature, 1959, Chapter 192, page 430, changes the name of the Livestock Sanitary Commission of Texas to the Texas Animal Health Commission and provides that hereafter all or any references thereto or laws relating to the Livestock Sanitary Commission shall apply to the Texas Animal Health Commission, and all appropriations and benefits should be available to and apply to the Texas Animal Health Commission.

House Bill 31, Acts of the 56th Legislature, 1959, Regular Session, Chapter 188, page 418, sets up a Bovine Brucellosis Control Program and authorizes the designation of brucellosis control areas upon petition of seventy-five per cent of the cattle owners in the area owning at least fifty-one per cent of the cattle within that area.

Subdivision 7 authorizes two types of areas stating:

"(7) Two (2) types of brucellosis control areas may be established. These types are:

"I. An area in which no testing shall be required but in which all female calves shall be required to be officially vaccinated within ages fixed by regulation of the Texas Livestock Sanitary Commission and in compliance with the regulations of such Commission relating to vaccination.

"II. An area in which such test, vaccinations, identifying practices, quarantines, disposition of infected animals and other practices as provided by regulations of the Texas Livestock Sanitary Commission shall be followed.

"The petition of the cattle owners constituting the basis for the proclamation establishing the brucellosis control area shall state which type, 'I' or 'II,' control area is desired in the affected area and the proclamation establishing the control area shall designate which type, 'I' or 'II,' is established. No type control shall be established unless that type has been properly requested."

Subdivision 15 authorizes the Texas Animal Health Commission to employ "veterinarians, inspectors, stenographers and necessary clerical help and such other persons it may deem necessary for the performance of any duty under this Section."

We are unable to find any provision in House Bill 31

or in any other general law applicable to the Texas Animal Health Commission which authorizes the Texas Animal Health Commission to accept donations.

House Bill 4, Acts of the 56th Legislature, Third Called Session, 1959, (the General Appropriation Act) contains the following appropriation to the Texas Animal Health Commission:

"Out of General Revenue Fund:

"For Salaries and Wages:

". . .

| | | | |
|---|---|---|---|
| 3. | Director, Contagious and Infectious Disease | 7,500 | 7,500 |
| 4. | Director, Inspections and Regulations | 6,000 | 6,000 |
| 5. | Accounting Clerk I | 3,300 | 3,300 |
| 6. | Stock Clerk I | 2,712 | 2,712 |
| 7. | Secretary III | 3,384 | 3,384 |
| 8. | Stenographer IV | 3,192 | 3,192 |
| 9. | Stenographer II, NTE $3,012 | 12,048 | 12,048 |
| 10. | Seasonal and Part-time Help | 3,000 | 3,000 |

"Field Program

| | | | |
|---|---|---|---|
| 11. | Veterinarian | 7,000 | 7,000 |
| 12. | Veterinarians, NTE $6,000 | 24,000 | 24,000 |
| 13. | Livestock Inspector II, NTE $3,900 | 7,800 | 7,800 |
| 14. | Livestock Inspector I, NTE $3,300 | 141,900 | 141,900 |
| 15. | Livestock Handler, NTE $8 per day | 12,000 | 12,000 |
| | "Subtotal, Salaries and Wages | $ 248,836 | 248,836 |

"For Other Expense

| | | | |
|---|---|---|---|
| 16. | Travel Expense | 113,580 | 113,580 |
| 17. | Diagnostic services, including bacteriological, serological, toxicological and pathological examination by interagency or commercial contracts | 10,800 | 10,800 |

18.  Office and equipment
     rentals, supplies and
     materials, printing,
     equipment, repairs,
     telephone, telegraph,
     postage, dip materials,
     cattle marking paint and
     other contingent expense    13,759       11,584
19.  . . .

     "Total, Central Office
     and Field Program        $ 401,975      399,800

"Brucellosis Program

"For Salaries and Wages:

20.  Supervising Veterinarian,
     NTE $6,000                  12,000       12,000
21.  Supervisor of Laboratories  4,440        4,440
22.  Senior Technician,
     NTE $3,600                  54,000       54,000
23.  Clerk Typist, NTE $2,880     8,640        8,640

     "Subtotal, Salaries and
     Wages                       79,080       79,080

"For Other Expense:

24.  Travel Expense              40,000       40,000
25.  Consumable supplies and
     materials, current and
     recurring operation ex-
     pense, and capital ex-
     pense (excluding travel)     4,000        4,000

     "Total Brucellosis
     Program                  $ 123,080      123,080

     " . . .

     "The moneys appropriated hereinabove to the
Texas Animal Health Commission under the subhead-
ing 'Brucellosis Program' are to be expended pur-
suant to the provisions of House Bill No. 31, Acts,
1959, Fifty-sixth Legislature, Regular Session,

and none of such moneys may be expended for purposes other than House Bill No. 31. At the discretion of the Executive Director of said Commission, however, personnel provided the Commission in Items 3 through 15 above, and appropriations for other costs in Items 16 through 18, may be applied to the administration of said House Bill No. 31.

"In instances where cooperative agreements are made between cattle owners and the Texas Animal Health Commission for reimbursing said Commission in order to provide supervision, vaccination or testing services by certified personnel in accordance with the provisions of H.B. No. 31, Acts, 1959, Fifty-sixth Legislature, Regular Session, such reimbursements are hereby appropriated to said Commission for the administration of the Brucellosis Program in accordance with said H. B. No. 31.

"In the event that cattle owners elect to participate in area or county programs for the control and eradication of bovine brucellosis and to contribute funds for additional personnel, supplies or operating expenses for such program, such contributed funds are hereby appropriated for the purposes specified for such donors."

It is noted that the appropriation to the Texas Animal Health Commission appropriates moneys by line item and authorizes the expenditure of the items (Items 3-15 and 16-18) to be applied to the administration of the Brucellosis Program authorized by House Bill 31.

Subdivision (k) of Section 3 of House Bill 3, Acts of the 55th Legislature, Regular Session, 1957, Chapter 100, page 213, provides:

"(k) No officer or employee of a state agency, Legislator or legislative employee shall receive any compensation for his services as an officer or employee of a state agency, Legislator or legislative employee from any source other than the State of Texas, except as may be otherwise provided by law."

In view of the provisions of Subdivision (k) of Section 3 above quoted, any salary supplementation must come from the State rather than any individual or group of individuals. See Attorney General's Opinion WW-376 (1958).

In Attorney General's Opinion WW-376 (1958), it was held that the Board for Texas State Hospitals and Special Schools may in its discretion "supplement the compensation of the Executive Director of the Board from gifts or grants received by the Board for the purpose of maintaining and operating research facilities and out-patient clinics, provided such supplementation is consistent with the purposes of such grants or gifts as specified by the donor. The amount of such supplementation may be set by the Board, but should be commensurate with the special duties performed by the Director in connection with the maintenance and operation of research facilities and out-patient clinics." It was specifically pointed out in that opinion, however, that it was necessary to limit it to the particular questions submitted and the answer to the question was granted upon statutory authority which was not necessarily applicable to other positions or situations. The fact situation involved in WW-376 revealed that the Board was authorized to accept and disburse gifts by general law (Art. 693,V.C.S.), and the biennium appropriation act appropriated such gifts and donations for the purposes for which the donor had stipulated.

In the instant case, however, there is no provision in the general law authorizing the Texas Animal Health Commission to accept gifts or donations, and such authority cannot be granted by a rider to an appropriation act. State v. Steele, 57 Tex. 200 (1882); Moore v. Sheppard, 144 Tex. 537, 192 S.W.2d 559 (1946); Attorney General's Opinion WW-96 (1957); Attorney General's Opinion WW-692 (1959).

You are, therefore, advised that the salary paid employees of the Texas Animal Health Commission is limited to the amount contained in the items in the General Appropriation Act.

SUMMARY

The compensation of the employees
of the Texas Animal Health Commis-
stion is limited to the itemized

Dr. L. R. Noyes, page 8 (WW-708)

amounts appropriated by the Legislature to the Texas Animal Health Commission for the payment of salaries and wages.

Yours very truly,

WILL WILSON
Attorney General of Texas

By John Reeves
John Reeves
Assistant

JR:mfh

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

Wallace Finfrock
J. Milton Richardson
Robert T. Lewis
James H. Rogers

REVIEWED FOR THE ATTORNEY GENERAL
BY:  W. V. Geppert