

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

October 8, 1951

Hon. Larry O. Cox
Executive Director
Board for Texas State Hospitals
  and Special Schools
Austin, Texas

Opinion No. V-1305

Re: Authority of the Board for
Texas State Hospitals and
Special Schools to transfer
funds between appropriated
line items or between appro-
priations of the various in-
stitutions in Article II of
House Bill 426, Acts 52nd
Legislature.

Dear Sir:

Your request for an opinion concerns certain ri-
ders in Article II of House Bill 426, Acts 52nd Leg., R.S.
1951, ch. 499, p. 1228 (the general appropriation bill),
pertaining to the appropriation for the Board for Texas
State Hospitals and Special Schools and the State Hospitals
and Special Schools under the jurisdiction of the Board.
You state that the questions arise by virtue of the holding
of this office in Opinion V-1254 (1951) with regard to the
constitutionality of the riders placing additional duties
upon the Legislative Budget Board. You then ask:

"1. Whether the Board for Texas State Hos-
pitals and Special Schools may add or substitute
position titles in accordance with Section 2, Ar-
ticle 2, H.B. 426.

"2. Whether the Board for Texas State Hos-
pitals and Special Schools may transfer between
line items of an institution and the central of-
fice appropriations or between institutions in-
cluding the central office appropriations as pro-
vided in Section 7, Article 2, H.B. 426.

"3. Whether the Board for Texas State Hos-
pitals and Special Schools may expend for renova-
tion or new construction of warehouse facilities

as provided in subsection (c) of Section
10, Article 2, H.B. 426."

You subsequently requested the opinion of this
office with regard to the authority of the Board to use
the annual $600,000 appropriation to the Board's Special
Reserve Account set up in Section 9(a) of Article II,
House Bill 426, supra, for purchase of food, clothing
dry goods, etc., without approval of the Legislative Bud-
get Board.  This particular appropriation was made to
cover unforeseen emergencies and needs which could not
be cared for by specific appropriations to the various
institutions because of the inability of the Legislature
to predict how many persons may become mentally ill or
contract tuberculosis or other illnesses requiring their
admission to State Schools and Hospitals.  Neither could
the Legislature forsee how much the cost of food, cloth-
ing, etc., might rise above the amounts appropriated di-
rect to each institution.

The rider (Sec. 2 of Art. II, House Bill 426,
supra) which gives rise to your first question provides
in part:

"No institutions shall employ any person
at any title not contained in the list of ti-
tles of positions under the heading of Medical
Treatment and Patient Care Division for each
institution provided in this Article, unless
or until there has been prior approval by the
Legislative Budget Board to add or substitute
position titles with rates of pay within the
following maximum salary scales appropriate to
the class of position herein set forth."
(There follows a list of position titles and
the salaries to be paid the persons having the
titles set out.)

Your second question involves Section 7(a) of
Article II, House Bill 426, supra, which provides:

"Transfer of Appropriations:  (a)  No
funds may be transferred between line items of
an institution and Central Office Appropriation
or between institutions including the Central
Office appropriations as provided in this Arti-
cle, without prior written approval of the Leg-
islative Budget Board.  All requests for said

transfers submitted to the Legislative Budget Board must have the prior written approval of the Board and/or Council. Requests for all said transfers must be submitted to the Legislative Budget Board in writing with complete and adequate justification, together with all pertinent supporting data pertaining to the necessity for such transfer, including a certified copy of the minute or minutes approving said request for transfer by the Board and/or Council. Upon approval of transfer requests made by the Board and/or Council, the Legislative Budget Board shall certify same in writing to the State Comptroller of Public Accounts who is hereby directed to make transfer of the fund, or funds, from either or all of the aforesaid accounts, in whole or in part, from one line item to another within the appropriations of any or all institutions and Central Office, or from one institution to another including the Central Office, in the amount or amounts and for the purpose or purposes as set out in the certification of approval by the Legislative Budget Board. The State Comptroller shall set up a separate account for the purpose of each transfer."

Section 10(c) of Article II, House Bill 426, supra, involved in your third question, provides:

"Central Warehouse System:  The Board is hereby authorized to establish a central warehouse system of not to exceed three warehouses to serve all institutions under the jurisdiction of the Board. In order to facilitate such a warehouse system, there is hereby appropriated out of the Board Local Fund the sum of Two Hundred Thousand Dollars ($200,-000), to be known as the Warehouse Revolving Fund, to purchase stocks of goods, supplies, materials and equipment to be distributed to the said institutions included in this Article, on a reimbursable basis. Any funds collected by the Central Warehouse System from sales is hereby reappropriated to the Warehouse Revolving Fund for future purchases and operations.

Charges made to institutions for such mer-
chandise furnished shall include overhead
charges sufficient to meet the cost of op-
eration of said warehouse system. Pro-
vided, however, that the Board of Control
shall continue to handle purchases for the
Board in the same manner as is done for
other State agencies. All stocks of goods,
supplies, materials and equipment belong-
ing to any institution in excess of a three
(3) month normal usage requirement are here-
by transferred to the Central Warehouse Sys-
tem without cash or credit reimbursement.
All stocks of goods, supplies, materials
and equipment required for a three (3) months
normal usage may be transferred to the ware-
house system at a value set by the Executive
Director. The Board is hereby authorized to
utilize any available buildings owned by the
State that may be suitable for warehouse pur-
poses; however, no expenditure from any source
shall be made for renovation or new construc-
tion of warehouse facilities without obtain-
ing prior written approval of the Legisla-
tive Budget Board."

Section 9(a) of Article II, House Bill 426, supra,
which is involved in the question you asked subsequent to
the opinion request considered herein, provides:

"Sec. 9. (a) There is hereby appropri-
ated out of any moneys in the State Treasury
not otherwise appropriated the sum of Six
Hundred Thousand Dollars ($600,000) for the
fiscal year beginning September 1, 1951, and
ending August 31, 1952, and a like amount of
Six Hundred Thousand Dollars ($600,000) is
hereby appropriated for the fiscal year be-
ginning September 1, 1952, and ending August
31, 1953, to be set up and known as the
Board Special Reserve Account to be made avail-
able to meet unforeseen emergencies which may
arise during the biennium covered by this ap-
propriation for Hospitals and Special Schools.
Any balance remaining in said reserve account
as of August 31, 1952, is hereby appropriated
to said account and made available for the fis-
cal year beginning September 1, 1952. Said

Board Special Reserve Account shall be expended only for purchase of food, clothing and dry goods, medicines, and utility service, only after approval of transfer to the institution, or institutions, where said funds are to be expended; except that in the event an institution is activated at Brady, Texas, moneys from the Reserve Account may be used for the operation, including salaries, of said institution.

"All transfers from said account shall require prior written approval by the Legislative Budget Board, in the same manner and by the procedure as provided in (a) of Section 7."

It will be noted that in each of the above riders, in addition to the approval or action of the Board for Texas State Hospitals and Special Schools, the approval by the Legislative Budget Board is also required prior to the expenditure or transfer of the funds appropriated or the change in the titles listed in other parts of the appropriation bill. In Attorney General's Opinion V-1254 (1951), it was stated that

"Since the State departments, institutions of higher education, and other State institutions are not a part of the legislative branch of the State government, these riders, in requiring further itemization of appropriations or approval of the expenditure of appropriated funds by the Legislative Budget Board, violate the constitutional provision prescribing the separation of powers.

". . .

"Therefore, in so far as the powers and duties of the Legislative Budget Board are extended in House Bill 426 beyond the duties prescribed for that Board in the statute by which it was created, the Legislature has attempted to place upon the Board duties which are in violation of Section 1 of Article II of the Texas Constitution."

The riders involved in your request, except Section 9(a) of Article II, are worded in a negative manner, and the questions arise because of a possible contention that after striking down the unconstitutional portion, the authority conditionally granted thereby would be expressly

prohibited. This is an extremely technical construction which is dependent solely upon the grammatical style in which the Legislature expressed its willingness for certain functions to be performed by the Board for Texas State Hospitals and Special Schools.

The effect of this construction would be that the Legislature intended for the Board and the hospitals and schools under the jurisdiction of the Board to operate strictly under the line appropriations during the biennium unless the operation was exactly as provided in the various riders. The rationale of such a position would have to be that the transfer and other provisions were unnecessary to the operation of the system unless they could be carried out by the Legislative Budget Board.

In State v. Carter, 27 P.2d 617 (Okla. Sup. 1933), the Court had before it an appropriation bill in which it was provided that the funds appropriated to the Corporation Commission were to be expended "by and with the approval of the Governor." The Court held that the approval provision was an attempt to place general legislation in an appropriation bill and, therefore, unconstitutional. It was contended that if the limitation was void the entire appropriation must fail. In overruling this contention, the Court said:

". . . We are dealing with a general appropriation bill. None of the decisions cited applies to such a bill. If the rule stated is applicable to the provisions of the general appropriation bill, its application is dependent upon a construction of the legislative intent. In determining that question, the rule is stated in 59 Corpus Juris, § 206, pages 642, 646, to be '* * * If, when the invalid part is stricken out, that which remains is complete in itself and capable of being executed in accordance with apparent legislative intent, wholly independent of that which was rejected, it must be sustained to that extent; and this rule is especially applicable where the statute provides for two distinct subjects. In this connection it has frequently been declared that the valid part of a statute will be sustained where the valid and invalid parts are so separate and distinct that it is clear or may be presumed that the legislature would have enacted the former without the latter, if it had known of the invalidity, or, as otherwise stated, if the valid or invalid parts are

not so intimately connected as to raise the presumption that the legislature would not have enacted the one without the other, the act will be upheld so far as valid. On the other hand, the whole statute will be declared invalid where the constitutional and unconstitutional provisions are so connected and interdependent in subject matter, meaning, and purpose as to preclude the presumption that the legislature would have passed the one without the other, but, on the contrary, justify the conclusion that the legislature intended them as a whole and would not have enacted a part only. In other words, the whole act will be declared invalid where the unconstitutional part is so connected with the remainder or with the general scheme, that it cannot be stricken out without making the legislative intent ineffective, or is of such import that without it, the other parts would cause results not contemplated or desired by the legislature, or is the consideration and inducement of the whole act, although it has also been held that the rule of indivisibility where the invalid part is the inducement or consideration of the whole act does not apply if the invalid provisions, although appearing in the same chapter of the revised laws, were enacted in previous years. In determining the question whether the act would have been passed without the invalid part, the rule has been laid down, that, if the mere elision of the words or provisions which give an unconstitutional effect, will leave a consistent and workable act, the remainder will be valid; but if modifications or limitations must be inserted or understood to avoid the fatally broad effect of the statutory language, the whole act must fail. * * *'

"As to the item in question, when measured by that rule, we find that the 'elision of the words or provisions which give an unconstitutional effect, will leave a consistent and workable act.' that is, will leave an appropriation singular, definite, and certain. That which will remain, 'is complete in itself and capable of being executed in accordance with the apparent legislative intent.' The valid and invalid parts are so separate and distinct that it is clear, or may be presumed, that the Legislature would have enacted the former without the latter, if it had known of the invalidity of the

latter. We cannot hold otherwise without holding that the Legislature would not have made an appropriation for the purpose of enabling the Corporation Commission to perform a duty enjoined upon it by the Constitution, if it had known that it could not require the amount appropriated to be expended 'by and with the approval of the Governor.' We cannot so hold. We must give to the Legislature every presumption of an intention to conform its actions to the provisions of the Constitution. We do so in this case. We therefore hold that, had the Legislature known of the invalidity of its attempt in a general appropriation bill to vest the Governor with power that he did not theretofore have, it would have made the appropriation for the performance of the constitutional duty of the Corporation Commission notwithstanding. The Legislature made the appropriation. Evidently it was intended to be used. There is nothing in the act to indicate any other intention. The fact that the Legislature attempted to vest approval of its use in the Governor in no wise operates to show that the Legislature did not intend for the amount to be used. . . . We cannot conclude that the Legislature intended that, if those legislative provisions were void, the appropriations made in a general appropriation bill would fail. We refuse to so hold. To do so would be to hold that the Legislature did not intend to make appropriations for the conduct of the government of this state, unless its attempt to legislate in a general appropriation bill, in violation of the plain and unambiguous provisions of the Constitution, was lawful."

Texas Courts have applied these same rules of construction in cases involving statutes which are unconstitutional in part. Ohio Oil Co. v. Giles, 235 S.W.2d 650 (Tex. Sup. 1951); Western Union Tel. Co. v. Texas, 62 Tex. 630 (1884).

Under these rules, all of Articles II of House Bill 426 must be considered in determining if the authority contained in the quoted riders would have been included in the Article without the proviso requiring approval by the Legislative Budget Board. A technical construction which would remove a word or phrase from a

sentence and attempt to apply literally what remains would be prohibited.

The primary intent of the Legislature in passing the various provisions in Article II, as shown by the wording of those provisions, was to set up a method whereby transfers of funds and other changes could be made in order for the State Hospitals and Special Schools to be efficiently and economically operated. The procedure adopted was to place the initiating power in the Board for State Hospitals and Special Schools, and then have their action approved by the Legislative Budget Board. We think it is clearly evident that the power to carry out these provisions would have been placed solely in the Board for State Hospitals and Special Schools had the Legislature known the Budget Board requirement was unconstitutional. The number of riders contained in the "General Provisions" portion of Article II which grant to the Board for Texas State Hospitals and Special Schools authority to make changes in the line appropriations set out in Section 1 shows that the Legislature was cognizant of the fact that the specific appropriations must be supplemented and changed to some extent. In the final analysis, it appears that it would be virtually impossible for the Board to carry out its functions without the authority contained in the above quoted riders and the other riders contained in Article II. The Legislature surely did not intend the Texas State Hospitals and Special Schools to cease operations should the functions of the Legislative Budget Board set out in Article II be unconstitutional.

The primary intent discussed above is clearly indicated in the rider (Sec. 9(a) of Art. II, House Bill 426) which provides for the transfer from the Board's Special Reserve Account. The transferring authority is contained in affirmative language in the first paragraph, whereas in a subsequent paragraph the transfers are conditioned upon prior written approval by the Legislative Budget Board. Should this second paragraph be deleted as unconstitutional the affirmative authority to transfer the funds remains unconditioned. Therefore the Board clearly has the authority to transfer the funds provided for in Section 9(a) of Article II.

In State Board of Agriculture v. State Administrative Board, 197 N.W. 160 (Mich. Sup. 1924), the supervisory control of the agricultural college was, by the

appropriation bill, placed in the State Administrative
Board instead of the State Board of Agriculture which
previously had supervised the college.  The Court held
that the provision in the appropriation bill transfer-
ring the supervision of the college was invalid and the
contention was made that the invalidity of the provi-
sion nullified the entire appropriation.  In overruling
this contention, the Court stated:

> ".  .  . This being true, the question
> arises, Does the unconstitutional provision
> of the statute nullify the whole act?  To
> hold that it does, we must assume that the
> Legislature would not have made the appropri-
> ation except for the fact that the money was
> to be expended under the general supervisory
> control of the state administrative board.
> The main purpose of the Legislature was to
> grant an appropriation to the college to en-
> able it to carry on its extension work in co-
> operation with the federal authorities.  A
> previous Legislature had committed the state
> to that policy.  The appropriation was made
> to support one of the most important activi-
> ties of the college.  In making it the Legis-
> lature was but obeying the mandate of the Con-
> stitution that it should grant appropriations
> for the support of the college and its various
> activities.  Section 10, art. 11, Constitution
> of 1908.  It had become a fixed habit with
> this Legislature to confer upon the administra-
> tive board general supervisory control over
> all appropriations.  As has been heretofore
> pointed out, this appears from the various
> acts enacted at this same session.  It is not
> reasonable to assume, therefore, that it in-
> tended the appropriation to fail if for any
> reason the state administrative board could
> not exercise a general supervisory control
> over its expenditure.  As we have indicated,
> the appropriation was necessary to carry on
> the very important work of taking the college
> to the people.  Its purpose was mainly to bene-
> fit those who could not reside at the college.
> The Legislature did not want this work to fail;
> it knew that an appropriation was necessary if
> it were to be continued.  The main purpose was
> the appropriation.  The supervisory control was
> but incidental, due to the legislative policy.

In these circumstances we think that the Legislature did not intend the appropriation to fail, and that the attempt to confer unconstitutional authority on the state administrative board did not nullify the balance of the act. . . ."

The Texas Legislature, in House Bill 426, placed supervisory control over many appropriations in the Legislative Budget Board. The fact that the supervisory control is unconstitutional does not have the effect of doing away with the affirmative action which was conditioned upon the Board's approval. The legislative history of the provisions in question reveal that in the past the administrative body which had control of the State Hospitals and Special Schools was always given the power to take the actions in question without the approval of a Legislative Budget Board. This is revealed in the following paragraph from your request:

"Inasmuch as previous legislatures have nearly always provided for changes and substitutions of amounts appropriated to the State Board of Control and the Board for Texas State Hospitals, it is the interpretation of this department that the Legislature intended that the Board for Texas State Hospitals and Special Schools should have the authority to add or substitute position titles in accordance with Section 2 and to transfer appropriations in accordance with Section 7 of the appropriation bill. Prior to 1949 the State Board of Control was in charge of the eleemosynary institutions, and we have checked the riders to the appropriation bills back to 1941, and we find that transfer of appropriations was allowed by the Legislature to the State Board of Control and to the Hospital Board in one form or another each biennium."

A somewhat similar situation was involved in Moore v. Sheppard, 144 Tex. 537, 192 S.W.2d 559 (1946). The rider involved in that case required the clerks of all courts to deposit fees for making unofficial copies in the State treasury and to execute an affidavit that such deposit had been made, and provided that

". . . The Comptroller shall not issue a warrant in payment of the salary of any such

employee for any month unless and until the affidavit required herein has been filed for said previous month."

Holding the rider invalid, the Court said:

"There being no statutory duty requiring petitioners to furnish uncertified, unofficial copies of opinions of the Courts of Civil Appeals, no statute fixing any fee for such services, and no valid statute requiring that money received therefor be deposited in the State Treasury, there is no debt owing by petitioners to the State. Since petitioners are not required to account to the State Treasurer, under the existing statutes, for such receipts, they cannot be required to execute an affidavit that such funds have been deposited in the State Treasury as a condition for the delivery of their monthly salary warrants."

Thus, under similar circumstances, the Texas Supreme Court has held the appropriation to be effective, although the attached rider was negative in form and the condition was held invalid.

It is our opinion, therefore, that the Board for Texas State Hospitals and Special Schools has the authority to perform the functions set out in your questions. Under the holding in Attorney General's Opinion V-1254 (1951), the approval of the Legislative Budget Board is not required.

## SUMMARY

The Board for Texas State Hospitals and Special Schools has authority to add or substitute position titles under Sec. 2 of Art. II of H.B. 426, Acts 52nd Leg., R.S. 1951, ch. 499, p. 1228. The Board may transfer appropriations between line items of the institutions under its control or between institutions and the central office as provided in Sec. 7(a) of Art. II of H.B. 426, supra, and expend appropriated funds for renovation or new construction of warehouse facilities as provided in Sec. 10(c) of Art. II of H.B. 426, supra.

The Board also has the authority to make the use and transfer of funds appropriated to the Board's Special Reserve Account as provided in Section 9(a) of Article II of House Bill 426, _supra_, for food, clothing, dry goods, medicine, etc., to meet unforeseen emergencies in State schools and hospitals.

The unconstitutionality of the requirement of Legislative Budget Board approval prior to exercise of the above functions by the State Board for Hospitals and Special Schools does not render the entire functions and appropriations invalid.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

C. K. Richards
Trial & Appellate Division

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

EJ:EWT:wb

_E. Jacobson_
E. Jacobson

_E. Wayne Thode_
E. Wayne Thode
          Assistants