ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

May 3, 2007

The Honorable Mike Stafford
Harris County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002

Opinion No. GA-0544

Re: Whether a county medical examiner is authorized
to recoup costs incurred when the medical examiner
permits a tissue procurement organization to remove
tissue using the medical examiner's facility and
resources under section 693.002(b), Health and Safety
Code (RQ-0545-GA)

Dear Mr. Stafford:

Section 693.002(b) of the Health and Safety Code authorizes a county medical examiner to permit a qualified tissue procurement organization to remove tissue from a decedent in certain circumstances. *See* TEX. HEALTH & SAFETY CODE ANN. § 693.002(b) (Vernon Supp. 2006). You ask whether a county medical examiner is authorized to recoup costs incurred when the medical examiner permits a tissue procurement organization to remove tissue using the medical examiner's facility and resources under section 693.002(b).[1]

Section 693.002 pertains to the removal of organs and tissue from decedents who died under circumstances requiring an inquest. *See* TEX. HEALTH & SAFETY CODE ANN. § 693.002 (Vernon Supp. 2006); *see also* TEX. CODE CRIM. PROC. ANN. art. 49.25, § 6(a) (Vernon 2006) (setting out circumstances in which an inquest is required). Section 693.002 provides:

> (a)(1) On a request from a qualified organ procurement organization, . . . the medical examiner . . . may permit the removal of organs from a decedent who died under circumstances requiring an inquest . . . if consent is obtained pursuant to Section 693.003.
>
> . . . .
>
> (6) If, in performing the duties required by this subsection, the medical examiner . . . is required to be present at the hospital to

---

[1]*See* Letter and Memorandum Brief from Marva Gay, Assistant Harris County Attorney, to Honorable Greg Abbott, Attorney General of Texas (Oct. 20, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter and Memorandum Brief respectively].

> examine the decedent prior to removal of the organs or during the procedure to remove the organs, the qualified organ procurement organization shall on request reimburse the county or the entity designated by the county for the actual costs incurred in performing such duties, not to exceed $1,000. . . .
>
> . . . .
>
> (b)   On a request from a qualified tissue procurement organization, as defined in Section 692.002, the medical examiner may permit the removal of tissue believed to be clinically usable for transplants or other therapy or treatment from a decedent who died under circumstances requiring an inquest if consent is obtained pursuant to Section 693.003 or, if consent is not required by that section, no objection by a person listed in Section 693.004 is known by the medical examiner. If the medical examiner denies removal of the tissue, the medical examiner shall explain in writing the reasons for the denial. . . . to:
>
> > (1)   the qualified tissue procurement organization; and
> >
> > (2)   the person . . . who consented to the removal.

TEX. HEALTH & SAFETY CODE ANN. § 693.002(a)–(b) (Vernon Supp. 2006); *see also id.* §§ 693.003–.004 (Vernon 2003) (setting out circumstances in which consent is required and listing the persons who may consent or object to organ or tissue removal). A qualified organ procurement or tissue procurement organization is an organization that

> procures and distributes organs or tissues for transplantation, research, or other medical purposes and that:
>
> > (A)   is affiliated with a university or hospital or registered to operate as a nonprofit organization in this state for the primary purpose of organ or tissue procurement; and
> >
> > (B)   if the organization is an organ procurement organization, is certified to act as an organ procurement organization by the appropriate federal agency.

*Id.* § 692.002(9).

You distinguish between organ procurement, which is governed by section 693.002(a), and tissue procurement, which is governed by section 693.002(b). *See* Memorandum Brief, *supra* note 1, at 1. You equate the term "organ" with the phrase "visceral organ," which section 693.001 defines

to mean "the heart, kidney, liver, or other organ or tissue that requires a patient-support system to maintain the viability of the organ or tissue." TEX. HEALTH & SAFETY CODE ANN. § 693.001 (Vernon 2003); *see* Memorandum Brief, *supra* note 1, at 1. You inform us that "[o]rgans are typically removed at a hospital in a sterile environment while the patient is connected to a life support system, not at" the medical examiner's facility. Memorandum Brief, *supra* note 1, at 1. By contrast, you state, "the tissue that is recovered from decedents is usually skin, bone, *dura mater*,[2] heart valves, veins and corneas," none of which requires a patient-support system to remain viable. *Id.* (footnote added). You further state that tissue can be removed at the medical examiner's facility "in an aseptic recovery field." *Id.*

Your question pertains solely to the removal of tissue under section 693.002(b). *See* Request Letter, *supra* note 1, at 1. You suggest that the presence of qualified tissue procurement organizations in the medical examiner's facility creates difficulty for the medical examiner:

> [Tissue procurement organizations], including some located outside Harris County, increasingly vie with each other to recover tissue from decedents at the [medical examiner's] facility. The [medical examiner's] staff is challenged to referee disputes over which competing [tissue procurement organizations] may use the [medical examiner's] facility and staff, when, and how. The [medical examiner's] staff must monitor and control the [tissue procurement organizations'] use of resources including medical records, equipment, and decedent blood samples. The [medical examiner's] pathologists spend additional time on many donor cases as they work around the remnants of recovery surgery during the postmortem examination and as they communicate with the [tissue procurement organizations] regarding preliminary cause of death information. The presence of [tissue procurement organizations] in the [medical examiner's] facility places a burden on the ability of the [medical examiner's] office to perform duties mandated by law.[3]

Memorandum Brief, *supra* note 1, at 1 (footnote added). You inquire about a medical examiner's authority to obtain reimbursement from a tissue procurement organization. *See* Request Letter, *supra* note 1, at 1.

---

[2]*Dura mater* is "the tough outermost membrane enveloping the brain and spinal cord." THE NEW OXFORD AMERICAN DICTIONARY 530 (2001).

[3]A brief submitted to this office suggests that, contrary to the Memorandum Brief's assertions, the medical examiner in your county does not provide tissue procurement organizations with "facilities or use of medical personnel." Letter from Rusty Hardin, Rusty Hardin & Assocs., to Honorable Greg Abbott, Attorney General of Texas, at 21 (Dec. 21, 2006) (on file with the Opinion Committee). "Rather," the brief continues, "all the [medical examiner] may be asked to do is to expedite its statutory duties to perform an inquest so that it can release . . . tissue while [it is] still viable for donation." *Id.* Resolving fact issues is beyond the purview of the opinion process. *See* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 9, 18. We must assume for the purposes of this opinion, therefore, that the requesting governmental body has set forth a correct and complete version of the facts. *See* Tex. Att'y Gen. Op. No. GA-0249 (2004) at 2.

A court strictly construes a statute imposing a fee—that is, a charge to cover costs and not to raise revenue—and will not imply authority to impose a fee. *See Moore v. Sheppard*, 192 S.W.2d 559, 561 (Tex. 1946); *McCalla v. City of Rockdale*, 246 S.W. 654, 655 (Tex. 1922); *see also Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 461 (Tex. 1997) (distinguishing between license fees, which primarily serve to cover the costs of regulation, from taxes, which serve to increase the general revenues). As the Texas Supreme Court has stated, "[n]o officer is permitted to collect fees or commissions unless the same are provided for and the amount thereof declared by law." *McCalla*, 246 S.W. at 655.

Section 693.002(a)(6) authorizes a county to collect reimbursement, "not to exceed $1,000," from an organ procurement organization to be deposited in the county's general fund and applied to "the additional costs incurred by the office of the medical examiner . . . in performing" duties associated with attending an organ removal at a hospital. TEX. HEALTH & SAFETY CODE ANN. § 693.002(a)(6) (Vernon Supp. 2006). By contrast, section 693.002(b) does not authorize collecting reimbursement from a tissue procurement organization, establish a maximum reimbursement, or limit the uses to which reimbursement fees may be put. *See id.* § 693.002(b). Section 693.002 thus does not authorize a medical examiner to recoup costs from a tissue procurement organization. *Cf.* Tex. Att'y Gen. Op. No. GA-0389 (2005) at 11–12 (stating that section 693.002(a)(6) "[b]y its plain terms . . . does not provide for costs to be paid by a tissue procurement organization").

Additionally, a medical examiner has no independent statutory authority to collect reimbursement from a tissue procurement organization. Article 49.25 of the Code of Criminal Procedure authorizes certain counties to establish a medical examiner's office and provides medical examiners with certain duties and authority. *See* TEX. CODE CRIM. PROC. ANN. art. 49.25 (Vernon 2006). Nothing in article 49.25 authorizes a medical examiner to set or collect fees for duties associated with tissue procurement. *See id.*

Nor may the county commissioners court require reimbursement on behalf of the medical examiner. A county may not charge a fee unless specifically authorized to do so. *See Nueces County v. Currington*, 162 S.W.2d 687, 688 (Tex. 1942); *McCalla*, 246 S.W. at 655. No statute authorizes a county to set a fee to be collected from a tissue procurement organization for the use of the medical examiner's resources. *See* TEX. HEALTH & SAFETY CODE ANN. § 693.002 (Vernon Supp. 2006); *cf.* Tex. Att'y Gen. LO-94-066, at 2 (determining that a county commissioners court may not charge funeral homes for transporting bodies to the county morgue); Tex. Att'y Gen. LO-92-020, at 2 (concluding that a county commissioners court has no authority to charge funeral homes a daily fee for storing bodies at the medical examiner's office).

You suggest, however, that statutory authority for the medical examiner's collection of a fee is not necessary because a medical examiner's power to permit a tissue procurement organization to remove tissue is discretionary, not mandatory. *See* Memorandum Brief, *supra* note 1, at 1–3. As you point out, section 693.002(b) states that a medical examiner "*may* permit the removal of tissue." TEX. HEALTH & SAFETY CODE ANN. § 693.002(b) (Vernon Supp. 2006) (emphasis added); *see* Memorandum Brief, *supra* note 1, at 2. In general, the term "may" denotes "discretionary authority." TEX. GOV'T CODE ANN. § 311.016(1) (Vernon 2005). Thus, as you assert, a medical examiner "is

under no obligation under the law to permit a [tissue procurement organization] to remove tissue." Memorandum Brief, *supra* note 1, at 2. You cite *Moore v. Sheppard*, a 1946 Texas Supreme Court case, and Attorney General Opinion GA-0364, issued in 2005, for the proposition that an officer may collect a fee for performing duties the officer is not required by law to perform. *See* Memorandum Brief, *supra* note 1, at 3; *see also Moore*, 192 S.W.2d at 560; Tex. Att'y Gen. Op. No. GA-0364 (2005) at 5–6.

But the principle articulated in *Moore* and Opinion GA-0364, allowing officers to charge fees for performing unofficial activities, does not apply here. The court in *Moore* determined that providing unofficial copies of court opinions is not among a clerk's official activities, and Opinion GA-0364 concludes that delivering eviction notices is not an official activity of a constable. *See Moore*, 192 S.W.2d at 560–61; Tex. Att'y Gen. Op. No. GA-0364 (2005) at 6. By contrast, facilitating tissue removal is an official activity of a medical examiner. *See* TEX. HEALTH & SAFETY CODE ANN. § 693.002(b) (Vernon Supp. 2006). We know of no authority or policy supporting your assertion that the word "may" in a statute, by itself, removes the activity that is subject to that statute from the realm of official activities. Moreover, despite the use of the word "may" in section 693.002(b), the medical examiner is obligated by statute to determine whether to allow tissue removal when requested to do so by a tissue procurement organization and to either allow the removal or provide a notice of denial. *See id.* We therefore conclude that the medical examiner's duties under section 693.002(b) are official activities for which any fee charged requires statutory authority.[4]

You also suggest that section 693.002(b), to the extent it requires a county "to provide a free facility and services to a private corporation," *i.e.*, a tissue procurement organization, contravenes article III, section 52(a) of the Texas Constitution. *See* Memorandum Brief, *supra* note 1, at 3–4; *see also* TEX. CONST. art. III, § 52(a) (prohibiting the grant of public funds to private entities). Article III, section 52(a) prohibits the Legislature from authorizing a county "to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever." TEX. CONST. art. III, § 52(a). The Texas Supreme Court has set forth a three-part test to determine whether a statute's grant of public resources violates article III, section 52(a):

> Specifically, the Legislature must: (1) ensure that the statute's predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return benefit.

*Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 384 (Tex. 2002).

---

[4]We note that we are not here faced with facilities or resources offered to a tissue procurement organization that may supplement, but are not necessary to, the tissue procurement procedure. *See generally* Memorandum Brief, *supra* note 1 (articulating the issue).

In analyzing your claim that section 693.002(b) is unconstitutional to the extent a medical examiner must provide free access to tissue procurement organizations, a court would begin by presuming the statute's constitutionality. *See Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003). If possible, a court would interpret the statute "in a manner to avoid constitutional infirmities." *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *see also Sullivan v. Andrews County*, 517 S.W.2d 410, 413 (Tex. Civ. App.—El Paso 1974, writ ref'd n.r.e.) (stating that a court will "always lean in favor of the validity of a legislative act," and if there is reasonable doubt about a statute's constitutionality, "the court will solve the doubt in favor of the statute" (quoting *Vincent v. State*, 235 S.W. 1084, 1088 (Tex. Comm'n. App. 1921, judgm't adopted))). We consequently begin by presuming that section 693.002(b) does not authorize a grant of public resources in violation of article III, section 52(a) of the Texas Constitution. Indeed, nothing in section 693.002(b) expressly requires that county resources be used in the tissue removal procedure.

In our opinion, providing free access to tissue procurement organizations, even if a grant of public resources occurs, does not violate article III, section 52(a). We consider that providing tissue that would otherwise not be freely available to tissue procurement organizations serves a predominantly public purpose and provides the county a return benefit. *See* Hearings on Tex. S.B. 351 Before the Senate Comm. on Health & Human Servs., 74th Leg., R.S. (Mar. 1, 1995) (testimony of Senator Moncrief) (tape available from the Texas State Library and Archives Comm'n) (noting that eight percent of potential organ donors in Texas fall within medical examiners' jurisdiction, who, between 1990 and 1993, denied the release of organs from 48 potential donors, thereby affecting at least 168 Texans who died because they did not receive a timely transplant); House Research Org., Bill Analysis, Tex. S.B. 351, 74th Leg., R.S. (1995) at 3 (noting that the bill would "facilitate the timely removal and transplantation of organs and tissue from decedents subject to a medical examiner inquest"). Further, both the requirement that a tissue procurement organization be "qualified" and the medical examiner's discretion to determine whether to permit or deny a request by a tissue procurement organization to remove tissue in a particular circumstance provide the requisite control ensuring that any use of public resources accomplishes a public purpose. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 692.002(9) (Vernon 2003), 693.002(b) (Vernon Supp. 2006).

For all of these reasons, we conclude that section 693.002(b) does not permit a county medical examiner to recoup from a tissue procurement organization costs incurred when the medical examiner permits the organization to use the medical examiner's facility and resources to remove tissue.

## S U M M A R Y

A county medical examiner is not authorized to obtain reimbursement from a tissue procurement organization for costs incurred when the medical examiner permits the organization to use the medical examiner's facility and resources to remove tissue under section 693.002(b), Health and Safety Code.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee